THE PEOPLE OF THE STATE OF NEW YORK, Appellants, *v*
HIRAM W. BOSTWICK and others, Respondents.

Delivery to the party in whose favor a deed is intended to operate, or to some
person in his behalf and for his immediate benefit, is necessary to give effect
to a deed.

Until such delivery, the parties eventually to be bound thereby may withhold
the delivery altogether, or may create an agency for its custody, and direct
its delivery upon any condition or contingency which they may see fit to pre-
scribe.

If such custodian be the general agent of the signer in the business to which
the instrument relates, his delivery thereof, though contrary to his instruc-
tions, would bind his principal.

If such custodian be the special agent, and if his agency relate only to the
particular document which he is authorized to deliver only on specified con-
ditions, which he does not observe, but delivers the instrument in violation
of his instructions, the delivery is a nullity, and will not bind the principal.

Where one of several co-obligors of a bond is intrusted with its keeping, and
instructed to deliver it to the obligee thereof only on condition that D. shall
sign the same as co-surety, such holder of the bond is the special agent of
his co-obligors, and the delivery of such bond to the obligee thereof, without
the signature of D., is a nullity, and the co-obligors will not be bound thereby.

THE facts in this case are sufficiently stated in the opinion
of Judge CAMPBELL to enable the profession to understand
the principles decided.

*John H. Reynolds*, for the appellants.

*Henry R. Selden and S. Hand*, for the respondents.

CAMPBELL, J.   In December, 1855, the commissioners of
the canal fund loaned to the Bank of Corning twenty-five
thousand dollars.   The bond in suit was executed by the
defendants as sureties — undertaking and agreeing that the
bank should repay the money borrowed.   The bond was signed
and acknowledged at Corning, and was handed over to Bost-
wick, who was the president of the bank, with the distinct
understanding that it was not to be used until it should be
signed by one Andrew B. Dickinson as co-surety.   The bond
would not have been signed by any of the defendants except

Bostwick and Laurin Mallory, the president and cashier of the bank, except upon the express condition that Dickinson was also to execute it. The bond was never signed by Dickinson. It was taken by Bostwick to Albany and the money obtained from the commissioners. The bond was perfect and complete on its face and no insertion of Dickinson's name as one of the obligors. The judge who tried the cause ordered judgment for the plaintiff; this judgment was reversed at General Term and the plaintiff appeals to this court.

The defendants claim that the contract is not binding on them, inasmuch as the condition has not been complied with; in other words, Dickinson not having signed, the instrument or writing was never delivered and was but a mere scroll and no bond.

In the case of *Lovett* v. *Adams* (3 Wend., 380), the defense was, that the bond had never been delivered by the obligors and the fact was offered to be proved by a co-obligor. The witness was rejected. Chief Justice SAVAGE said: "If a bond be signed and put into the hands of the obligee, or a third person, on the condition that it shall become obligatory upon the performance of some act by the obligee or any other person, the paper signed does not become the bond of the party signing the same until the condition precedent be performed. Until then there is no contract." In *Bronson* v. *Noyes* (7 Wend., 188,) a bond was given to the sheriff on an arrest. The sheriff said to the party signing, "sign the bond and he will get some other person to sign with you, or get other bail in the morning." By the court, NELSON, Justice: "If it was the agreement of the parties at the time it was put into the hands of the officer, that it was not to be delivered to take effect until additional bail was procured, then, whatever might be the intention of the defendant, the bond would be inoperative and have no legal existence." In both the foregoing cases, the bonds were handed over to the obligees, but were not in fact delivered so as to make them valid and binding. The rule is different with deeds. If the grantor does not intend that his deed shall take effect until some con-

dition is performed, he must keep it himself or leave it with a third person — a stranger to the transaction in escrow. "For," says BRONSON, Justice, in *Gillett* v. *North America Fire Insurance Co.* (23 Wend., 43), "if he deliver it as his deed to the grantee it will operate immediately and without any reference to the performance of the condition, although such a result may be contrary to the express stipulations of the parties at the time of the delivery." And the reason is manifest. On the delivery of the deed of the grantor to the grantee, as and for the deed of the former, no matter what the verbal conditions, the title, *eo instanti*, vests in the grantee, and can only be divested by process of law or by the voluntary execution of a deed by the grantee. A deed once delivered and accepted, its redelivery by the grantee will not revest the legal title in the grantor. (4 Wend., 585; 2 Johns., 84.) But a bond carries no title; it gives on its face only a right of action if the condition contained in it is not performed. Its return to the obligor, as a matter of course, destroys such right of action. While, therefore, a deed may not be given to a grantee in escrow, with verbal conditions on the performance of which it is to take effect, a bond may be given with conditions to the obligee, because the obligee takes nothing by his bond but a right of action, which, to render available to him, he must enforce by action, and which may be resisted by the obligor, showing that the condition had not been performed and therefore there was no debt — not urging the written contract, but showing that it never had any legal existence, having never, in fact, been delivered. If this view be correct, then it matters not in what relation Bostwick, the president of the bank, stood to the other defendants, whether as their agent or the agent of the State, or as the agent of neither. He had this bond in his hands as co-obligor and held it under an express agreement not to deliver it unless it was signed by Dickinson. It was transferred to the commissioners of the canal fund in violation of that agreement. So far as the defendants are concerned, except Bostwick and Laurin Mallory, this bond never had a legal existence. As to them it was never delivered, and unless we can convert

the bond into a bill of exchange or promissory note, the defense of the defendants must prevail. I have not deemed it 'necessary to go over the cases in other States, so numerously cited and ably commented on by the learned justices in the court below. With one or two exceptions, the authorities seem to be with the defendants. But if the principle is not settled by direct adjudication in this State, it certainly has been, I think, uniformly declared and recognized.

I am of opinion this judgment must be affirmed.

DENIO, Ch. J. The effect of the finding of facts by the judge is, that the covenant on which the suit is brought was signed and sealed by the defendants, and was delivered to the defendant Bostwick; to be by him delivered to the proper officer of the State, when and in case it should be signed by Andrew B. Dickinson, and not otherwise. It was never signed by Dickinson, but was delivered by Bostwick to the auditor without his signature. Bostwick was one of the sureties, and was, moreover, the president of the Bank of Corning, for the benefit of which bank the covenant was made. The question upon these facts is whether the instrument ever became operative as the defendants' deed.

Certain principles having a bearing on the case, are very well established; where a deed is delivered to the party who is the obligee or covenantee, it is impossible to annex a condition to such delivery. The effect of the instrument must then be determined by its language. This is a part of the great conservative rule of evidence, which declares that the terms of an instrument cannot be changed by parol proof. If it could be qualified or avoided by proof of words made use of at the time of the delivery, the safeguard which the law attaches to written contracts, would be overthrown; and the effect would be the same as though a party were permitted to show by parol that the actual contract was different from that which was manifested by the language of the writing.

But until the deed is delivered to the party in whose favor it is intended to operate, or to some person in his behalf and for his immediate benefit, it is in the power of the parties

who are eventually to be bound by it, although they have
signed and sealed it, to withhold the delivery altogether, or
to create an agency for its custody, and to direct its delivery
upon any condition or contingency which they may see fit to
prescribe. Such an agency may be general or special. If
the custodian be the general agent of the signer, in the
business to which the instrument relates — as if he be generally
authorized to borrow money for him upon securities to be
intrusted to him, his delivery of a particular deed, so intrusted,
though contrary to his instructions, would bind his principals.
But if the agency be special, if it relate only to a particular
document which he was authorized to deliver when and only
when some event had happened which the party had chosen
to prescribe as a condition to the delivery, the placing the
paper in the possession of the party in whose favor it was
drawn, without the happening of that event, would be an
unauthorized act and a nullity, and the instrument would
not become the deed of the party who had affixed his name
and seal to it. While it remains in the hands of the cus-
todian under such circumstances, and until the condition
upon which its delivery depended has been performed, it is
said to be in escrow, and is utterly inoperative ; and if such
custodian violate the terms of the deposit, and deliver the
deed without the condition having been performed, such de-
livery is not the act of the party whose signature and seal is
attached, and, as I have said, it is not his deed. It lacks one
of the circumstances requisite to the completion of every
deed, a delivery to the person in whose favor it is made.

The principles thus far stated are fundamental in the law
of written evidence. They lead to the determination of this
case in favor of the defendants, unless one or both of the
special circumstances relied on by the plaintiffs' counsel, take
the case out of the scope of those general principles.

It is argued, in the first place, that by committing the
instrument, after the defendants had affixed their names and
seals to it, to the custody of Mr. Bostwick, one of their num-
ber, with authority to deliver it to the auditor, after it should
be signed by Mr. Dickinson, he was clothed with the powers

of a general agent for them, and could bind them by a delivery not authorized by the instructions, which the other signers sought to make conditions of the delivery. But I am of opinion that he is to be regarded as the special agent of each of the persons who had subscribed the paper: none of them had any connection with the enterprise of borrowing the money from the State for the use of the bank, or any antecedent relations with each other. So far as it appears, it was quite indifferent to them whether the money was borrowed or not. They had consented to be sureties for its repayment, if Mr. Dickinson would assume the same responsibility, and this was the only concern they had in the matter. The entering into the contract of suretyship was an individual concern with each of the proposed sureties. It required the individual assent of each one, before he could be bound; and, in addition to such assent, that he should become individually a party to the deed by which the obligation was created. Until the completion of the deed, they had no connection with each other, no one of them could do any act to commit or affect the other, except by some distinct agreement beyond the general fact that each had consented, subject to the condition mentioned, to become a surety. By imposing the condition, each person who signed, said, in effect, this paper is not to become my deed, unless at the same time it becomes the deed of Mr. Dickinson. They could severally dispense with that condition, and permit a delivery which would make it the deed of those who so consented, but no one of them could dispense with the condition so to affect any other of their number. But the paper must be left in the hands of some one, unless they all came into the presence of the auditor. It might have been committed to a stranger, under the same condition which was attached to it in the hands of Mr. Bostwick, and if this had been done and that person had violated his trust, it cannot be pretended that the delivery by him would have been of any avail. It would be the common case of a delivery *in escrow* with the condition unperformed. If an agent, other than one of the signers, had received, and had taken it to the auditor's office, it may or it

may not be that the officer would have been more reluctant
to receive it, than he was when it was brought by one of the
co-sureties. Suppose some clerk of the bank, not a party to
the instrument, had taken it to the auditor, and had stated
that he had been sent with it by the assent of all the parties,
to deliver the paper and consummate the loan, he would have
been a stranger to the contract within the largest sense of
that word, and yet it cannot be doubted but that the sureties
would be entitled to show that he received it to hold as an
escrow until other sureties had signed. The case does not
depend upon the degree of likelihood which the character of
the agent might furnish to the party receiving the paper, that
he really possessed the power which he claimed, but upon the
authority actually committed to him. The auditor must be
supposed to have known that the character of Mr. Bostwick,
as one of the co-signers, and as the president of the bank, did
not empower him to do any act which should bind the other
co-signers. There was nothing, it is true, in the circumstances
specially to put him upon his guard, or to raise a suspicion;
but at the same time there was nothing done by the defend-
ants to mislead the officer. To illustrate the position, let us
suppose that the bond had been signed and left at the office
of the scrivener who drew it, the signers not having yet con-
cluded to perfect the act by delivery, and not intending to do
so until they should receive an indemnity, and that one of
those who had signed it should clandestinely take it and pro-
ceed to the auditor's office, and he, not suspecting any irregu-
larity, had received the delivery and advanced the money.
The appearances which in such a case would be presented to
that officer, would be precisely the same with those existing in
this case. He would have received the instrument from the
hands of one who would have been naturally enough intrusted
with it for absolute delivery; and yet no one would say that it
would be the deed of those whose names were subscribed.
This shows that there is nothing in the fact that it was pre-
sented by one who had signed it, which would authorize the
officer to assume that he had authority to deliver it for
the others. If he was interested as principal the argument

would be the same. ·The case is distinguishable from a bill or note negotiable to bearer or order; for there, an invitation is held out to every one that they may acquire that character by receiving it for value from one who has been intrusted with it. This is a peculiarity of commercial paper.

It has been truly argued that upon these principles great caution would be required of one receiving a sealed instrument from one of several parties purporting to have executed it. If our decision should strongly inculcate the necessity of prudence and care in such transactions, it would not in my opinion be hostile to sound policy. Men are easily enough led into suretyships of this kind, without the establishment of artificial rules to bind them against their consent. After all, business men must and do generally rely much upon the personal character of others with whom they enter into transactions, but in this and similar cases, they must be permitted to act upon their own proper peril, and not seek to cast the loss upon another if they misjudge. The principle that where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss, is not one of universal application, if the language be taken in a popular sense. In such cases the one who claims the benefit of the rule must not himself be guilty of negligence.

In the next place it is argued that the circumstance that the instrument did not contain any names of parties covenanting, except those who had actually signed the paper, distinguishes the case from the rules which have been mentioned. No doubt that was a feature in the paper calculated to avert suspicion; or, in other words, the presence of names in the body of the bond, of persons who had not signed would have been likely to lead to inquiry. But yet it is very certain that such an instrument would, notwithstanding, have been the deed of the parties who had actually signed and delivered the document, or had authorized it to be delivered; and on the other hand, parties who had duly signed and delivered would have been bound, although their names had not been written in the body of the instrument. If the question were

one of greater or less inattention on the part of the auditor, the circumstance relied on would have considerable weight. But it is a question of power in Bostwick to deliver the bond in the state it was, when he had been instructed to withhold the delivery until Dickinson had signed. Nothing short of an estoppel could preclude the defendants from setting up that the delivery was unauthorized. The leaving the paper in a state which would permit Bostwick plausibly to assert that it had been signed by all the persons who were expected to be sureties, falls far short of creating an estoppel. The auditor had it in his power to satisfy himself as to his authority, and he should have done so. I have looked carefully at the several cases which have been referred to by the respective counsel. The counsel for the State has referred to a case decided by the Supreme Court of Kentucky, nearly, if not fully in point, in his favor; the only distinction being, which I do not think material, that the instrument was left in the possession of the principal in the bond for whose benefit it was prepared. The delivery to him by the surety, though upon condition that another party should sign, was held to be equivalent to a delivery to the obligee, because, as it is said, it enabled him to apply it to the purpose for which it was designed. (*Millett* v. *Parker*, 2 Metc., 608.) The cases of *Bubler* v. *Hamilton* (2 Dess. Ch., *S. C.*, 226), and *Graner* v. *Neiber* (10 Smee. & Mars., 9), also relied on, did not present the precise question, and they were both decided on other grounds. *Camberledge* v. *Lawson* (40 Eng. L. & E., 228) arose on the pleadings and was decided against the sureties on the ground that the plea did not set up a delivery of the paper as an escrow, but only that the defendant signed it *on the faith* that other parties would execute it. It seems to have conceded that if the facts found in this case had been stated in the pleading, it would have been shown a defense.

The case of *Millett* v. *Parker* is not only irreconcilable with principle, but is opposed by a strong current of authority, which sustains the defense which has been interposed.

In *Pawling* v. *The United States* (4 Cranch, 218), the sureties in an official bond defended on the averment that

the instrument was not to have been delivered unless signed by other parties as sureties. It had been left with the principal signer to procure the signatures of the other parties. The point was expressly taken " that the delivery, as an escrow, ought to have been to a third person, and not to Bellinger, the principal obligor." It was held on a demurrer to evidence, the opinion being given by Chief ‑ Justice MARSHALL, that the facts, if proved, constituted a defense. *Lovett* v. *Adams* (3 Wend., 380) was an action on a bond with nine sureties. Several of them signed on a condition that it should not be delivered until certain conditions had been performed. The instrument seems to have been left with the others, who waived the conditions and delivered it; and it was held that the evidence was competent to establish a defense. *Fletcher* v. *Austin* (11 Verm., 447), *Johnson* v. *Butler* (4 Barn. & Ald., 440), *State Bank* v. *Evans* (3 Green [N. J.], 155), and *Bibb* v. *Reed* (3 Ala., 38), are all cases sustaining the view I have taken. In the case in New Jersey, the bond was delivered to the principal, who delivered it to the obligee, and it was said by the court that it was the same thing as though it had been delivered to a stranger.

I am for affirming the order of the General Term, and rendering judgment absolute for the defendants.

Judgment affirmed, and judgment absolute for defendants.