Richardson agt. Rogers.

## SUPREME COURT.

CHARLES RICHARDSON, Supervisor, &c., agt. JEREMY ROGERS, L. T. SAWYER, JOEL BLOOD, GEORGE F. PADDOCK *et al.*

*Execution of collector's bond — when condition claimed by sureties not sustained.*

A collector's bond for taxes, perfect on its face, apparently duly executed by all whose names appear therein, purporting to be signed, sealed and delivered, and actually delivered to and approved by the supervisor to whom it was given, without any stipulation or notice of any condition, cannot be avoided by the sureties upon the ground that they signed it on a condition that it should not be delivered unless it was executed by another person who did not execute it.

Especially should such sureties be held liable where they allowed the bond to stand unquestioned in the hands of the supervisor, and the collector to proceed with the collection of the taxes and the deposit of the same in the hands of another of the sureties, and the failure of the latter, before moving in the matter.

The conclusions reached in the case of *Wilder* agt. *Butterfield* (*ante*), as to the questions arising there, must control any like questions arising in this case.

*Jefferson Special Term, July* 1, 1875.

ACTION to enforce bond given by Rogers, as collector of the town of Watertown, signed by Blood, Sawyer and Paddock as his sureties, bearing date 4th December, 1874, in the penal sum of $26,314.8 5. The conditions of the bond states the taxes at $13,157.4 3.

No other names appear in the bond. No erasures are found. It was acknowledged, as the notary's certificate shows, 4th December, 1874, by Blood, Sawyer and Rogers. There is indorsed on the back of the bond an affidavit, viz.: " County of Jefferson, ss.: J. Blood, L. T. Sawyer and S. F. Paddock, *the sureties* named in the foregoing bond, being

severally duly sworn, doth each for himself say that he is a resident and freeholder within this state and worth $5,000, over and above all his debts and liabilities, and exclusive of property exempt from execution.

"L. T. SAWYER.   [L. s.]

"J. BLOOD.       [L. s.]

"G. F. PADDOCK.

"Sworn to before me, this 5th }
    day of December, 1874.   }

"LOTT FROST, Jr.,

"*Notary Public.*"

The bond was approved by the supervisor and filed with the county clerk of Jefferson, December 8, 1874, and the warrant delivered to the collector, who collected the taxes and deposited them with Paddock and Andrews, a firm doing business as bankers, until 15th January, 1875. The firm failed and a deficiency was reported by the county treasurer, and this action brought properly to enforce the bond. Emma Schley holds a mortgage, subsequent to the bond, on some of the property of Paddock.

The plaintiff is entitled to enforce the bond for $10,348.68 and interest from July 1, 1875, and costs.

Blood and Sawyer claim that they signed the bond on condition that Andrews was to sign, and that they instructed the party to whom they intrusted the bond not to deliver it unless so signed. Nothing appeared on the bond to notify Richardson of any condition as to it or its delivery, and he, in fact, had no notice or knowledge of any condition as to it, or any thing to qualify the bond in any respect when he approved it and filed it with the clerk. Blood signed it and left it on the counter of Paddock & Co.'s bank, being assured by Rogers and Frost that Paddock and Andrews would sign it. Blood next day looked it over and qualified to it, signed the affidavit aforesaid.

Sawyer was told by Frost that Paddock and Andrews would

Richardson agt. Rogers.

sign the bond, and Rogers stood by and confirmed Frost's statement. Sawyer told Frost not to deliver it over until they both signed it, and Frost said he would not use it till they both signed it.

The next day Frost called on Sawyer to sign the affidavit on the bond already stated above, and Sawyer so signed and gave the bond to Frost. It was used and no objection was made to its use by Blood or Sawyer, until after the failure of P. & Co. in January, 1875. When Sawyer told Frost not to deliver it over till P. and M. A. signed it, Frost replied it would be all right, he would not deliver bond till they signed it. Neither side produced Frost as a witness.

The taxes were collected in the usual way by Rogers, which collection was known to Sawyer and Blood, and they took no steps to ascertain what had become of the bond they had signed until after the failure of P. & Co. They both knew that the collector was to deposit the taxes with P. & Co., as he did do under an agreement to receive six per cent interest therefor.

They became due to the county treasurer the first week in February, and were not paid over by the collector.

*Williams & McCartin*, for plaintiff.

*F. W. Hubbard*, for Blood and O. Paddock.

*Starbuck & Sayer*, for defendant L. J. Sawyer.·

*Lansing & Rogers, & I. J. Dorwin*, for assignees.

*A. C. Beach*, for Emma J. Schley.

HARDIN, *J.* — Some of the questions made in this case arose in *Wilder, Supervisor Fourth Ward* agt. *Butterfield et al.*, and the views expressed in that case upon these questions will control the same questions here, and the findings

thereon will be made in accordance with the conclusions stated in that case.

The defendants Blood and Sawyer interposed, respectively, defenses which must be considered.

It appears by the evidence that they knew that Paddock & Co., bankers, had solicited the collector, Rogers, to deposit the taxes, when collected, with them, and that he had assented to that request, and that while such taxes were being collected he made such deposits.

It does not appear that the plaintiff, who as supervisor took the bond as such and approved of it, ever had any notice of any condition or agreement, or expectation in respect to any other person signing the bond, nor were there any names inserted in it of persons who had not executed it, nor any circumstances to put him upon inquiry as to any condition or · infirmity in respect to the bond at the time of his approval thereof.

The bond was presented to him by Lott Frost, Jr., and it was then approved and filed, and the plaintiff testifies that he never had any conversation with Blood or Sawyer until after the failure of P. & Co., and that they were not present when Frost delivered the bond. The plaintiff had no knowledge of any condition or limitation asked or stated by Blood or Sawyer. He took it in good faith, in the due execution of his duties, and approved of it in his official capacity, and filed it.

Can such conditional signing, or request as a delivery, or condition stated as to its delivery, be held sufficient to relieve Blood and Sawyer, or either of them ?

The learned counsel for the defendant Blood asks a finding of fact that Blood put his name upon the bond, and left it where he found it, on the counter of the banking office of P. & Co., and that he did not commit it to the custody of any one to use it. The first part of the request is assented to. The latter part must be qualified with a finding that he left it in the presence of Frost and Rogers, and the circumstances

justify the implication that he knew and expected they would comply with his request, and thus perfected, that the bond would be used for the purposes contemplated by him and Rogers when he agreed to sign the bond. It is apparent that Frost was the clerk of P. & Co., and acted in their interest in procuring the bond and delivery of it, in furtherance of their desire to obtain the deposit of the taxes.

The learned counsel for Blood and Sawyer might urge upon the court, as a conclusive authority, the case of *The People* agt. *Bostwick* (32 *N. Y.*, 445); and, also, *Lynn County* agt. *Farris* (14 *Am. Reports*, 389; *reported in* 52 *Mo.*, 75); *Ayres* agt. *Millroy* (14 *Am. Rept.*, 465). If it be assumed that Frost was the agent of Paddock, the further fact follows that the delivery, if made to Frost, was in effect a delivery to one of the obligees, to wit, Paddock, and the case would then be almost parallel to the case of *The People* agt. *Bostwick*. It would still differ in one very important and essential feature. For in that case it appears, by looking into the report thereof, in 43 *Barb.*, that the state officer, to whom the bond was delivered, was informed that Dickinson was to sign the bond, and that the state officer expressly stated that it was good enough as it was, and dispensed with the further execution.

Since the decision of *People* agt. *Bostwick* by the court of appeals in 1865, the doctrine then announced has been questioned in the same court, and in the United States supreme court.

As early as 1870, in *United States* agt. *Briggs*, in the United States court, judge DAVIS of the United States court reached a contrary conclusion, and boldly held and stated that a creditor could not thus be made " the victim of private understandings of which he is wholly ignorant, and has no reason to suspect." Kentucky state court held the same as the case last cited, and Indiana and Maine have also followed same rule.

In 1872, the supreme court of the United States, in *Duer*

Richardson agt. Rogers.

agt. *United States* (16 *Wallace* [*U. S. Reports*], 1), held that " a bond, perfect on its face, apparently duly executed by all whose names appear thereto, purporting to be signed and delivered, and actually delivered without a stipulation, cannot be avoided by the sureties upon the ground that they signed it on a condition that it should not be delivered unless it was executed by other persons who did not execute it, when it appears there was nothing to put him upon inquiry as to the manner of its execution, and that he had been induced upon the faith of such bond to act to his own prejudice."

In 1874, in *Russell* agt. *Freer* (56 *New York*, 71), judge GROVER cites the 16 *Wallace*, 1, with approval, and though the precise question here involved was not passed upon by the court of appeals, it does appear that the learned judge who wrote the opinion of the court in the 56 *N. Y.* entertained views more favorable to the rule laid down in 16 *Wallace* than to the one expressed in 32 *N. Y.* (*People* agt. *Bostwick*).

GROVER, J., says that *The People* agt. *Bostwick* "*may well be questioned.*"

This statement of the cases bearing upon the questions raised by the defendants Blood and Sawyer seems to justify the conclusion that this case is near parallel with the one reported in 16 *Wallace*, 1, and that the court should therefore follow it, especially as that case and the one in 56 *N. Y.* are the later authorities touching this most interesting and important question.

The defense of Blood and Sawyer must therefore be overruled, and they respectively be held liable upon the bond which they signed and suffered to be presented to the plaintiff, and approved by him and allowed to stand unquestioned until the failure of Paddock & Co.

If Blood and Sawyer had been diligent in ascertaining whether their bond had been properly used, and taken steps to be released from it immediately after its delivery to the supervisor, on the 8th of December, 1874, their position would

have been entitled to more consideration. They slumbered and allowed the public officer, whose business it was to see that the funds were properly secured to the town before they went into the hands of the collector, to approve of, act and rely upon their responsibility. They must now abide by the consequences which, by their own signing of the bond, have come to them. The reasoning of the court in *Duer* agt. *U. S.* (*supra*), applies to the case made, and is therefore followed by this court.

Judgment must be given in accordance with the views here expressed and the conclusions reached in the *Fourth Ward Case* as to the questions there considered which arise in this case, with costs to plaintiff.

Findings to be prepared by plaintiff and served and filed upon three days' notice after service of a copy of this opinion.