## Dun *v.* Garrett.

### (*Knoxville.* October 2, 1894.)

1. BONDS. *Delivery in escrow.*

    Where an unofficial bond, regular in form and perfect on its face, has been delivered by the principal maker to the obligee, and accepted in good faith by the latter, as a complete instrument, without knowledge on his part of any fact calculated to excite suspicion or cause inquiry as to the manner of its execution and delivery, a surety thereon cannot successfully defend himself against liability that has already accrued by reason of the principal's breach of the bond, upon the ground that the bond had been delivered by the principal maker to the obligee in violation of a private agreement between the principal and surety, made at the time the latter signed the bond and placed it in the principal's hands, that it should not be delivered to the obligee until another person designated had signed it.

    Cases cited: Perry *v.* Patterson, 5 Hum., 132; Carrick *v.* French, 7 Hum., 457; Majors *v.* McNeilly, 7 Heis., 294; Breedin *v.* Grigg, 8 Bax., 163; Quarles *v.* Governor, 10 Hum., 121; Bryan *v.* Glass, 2 Hum., 390; Governor *v.* Organ, 5 Hum., 161; Ezell *v.* Justices, 3 Head, 587; Amis *v.* Marks, 3 Lea, 573; Jordan *v.* Jordan, 10 Lea, 124; 2 Durn. & East, 21; 63 Mo., 212 (21 Am. Rep., 440); 1 Salkeld, 289; 23 Mich., 457; 27 Ind., 368; 32 Ind., 1; 53 Maine, 284; 2 Met. (Ky.), 608; 24 Grattan, 202; 16 Wall., 1; 4 Cranch, 219; 32 N. Y., 445; 56 N. Y., 67; 1 Southern Rep., 276; 6 Ga., 202.

2. SAME. *Same. Burden of proof.*

    But it must affirmatively appear, in such case, that the obligee took the bond without notice of its conditional delivery by the surety to the principal maker.

---

### FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McConnell, Ch.

PRITCHARD & SIZER for Dun.

CLARK & BROWN for Garrett.

BEARD, J.　A bond, unofficial in character, was executed by one Garrett as principal, and by these defendants as his sureties, payable to complainant as obligee.　This bond, regular in its form and perfect on its face, was delivered by the principal obligor to the obligee, and was accepted by the latter in good faith, as a complete instrument, without any facts or circumstances attending its delivery to excite suspicion or cause inquiry on the obligee's part as to the mode of its execution.　On these facts the question here presented for determination is this: After loss, covered by the terms of this bond, has occurred to the obligee, by the default of the principal obligor, can a surety avoid recovery for this loss upon the ground that he had made a private agreement with his principal, at the time of signing and leaving it in the latter's hands, that the principal obligor should not deliver it to the obligee until another party had signed it as surety, when, in violation of this agreement, and without the knowledge or consent of the surety, the bond was subsequently delivered?

The Court below held he could; that the bond so delivered was void as to the surety, and the bill was, therefore, dismissed.　From this decree the complainant has appealed.

The subject here presented has provoked much discussion, which resulted in some conflict of au-

thority. It will be necessary, in order to arrive at a correct conclusion in this cause, to examine with some care not only the cases in our own State in which this question has arisen, but also the decisions of Courts outside the State.

It is insisted by the appellee that the decree of the Chancellor is fully warranted by the rulings of this Court heretofore made. We do not think so. The earliest case in our reports is *Perry* v. *Patterson,* 5 Hum., 132. In that case a judgment creditor agreed with his debtor that he would grant him indulgence for twelve months if the latter would give him a note, with two good sureties, for the amount of the judgment. A note was made by the principal debtor, and signed by Perry as surety, but upon the distinct condition the principal would not deliver it to the payee, unless another person signed it as co-surety. The principal debtor failed to obtain the additional surety, and, in violation of the condition, and without the knowledge of the surety, he turned the paper over to the attorney of the creditor. This Court held that this note was an escrow, and that, having been delivered in violation of the condition making it such, the surety was not bound. In the course of the opinion, in commenting on the facts developed in proof, it is said: "It does not appear that the note was then received by the attorney in payment of the judgment, for he still insisted on having two sureties, as per agreement, and attempted by executions on the judgment to enforce

performance, without success." And again the Court say: "But we think it obvious, from the proof, that the note was not delivered to the attorney in execution of the agreement between him and Perry, but merely *lodged with him* till such time as Francis S. Perry could be induced to sign it. We are constrained to believe that the note has been retained as the last resort, after other mode of enforcing payment had failed." In other words, in that case there was neither a full delivery of the note to nor a final acceptance of it by the payee or his agent, and its retention and attempted enforcement against the surety, under the circumstances, was a case of "last resort," and in flagrant violation of his rights.

With these facts fully ascertained, it becomes apparent that the statement in the opinion of the Court that "it makes no difference, though the attorney did receive the note without the knowledge that it had been conditionally executed by Simpson Perry; the note was not delivered to the attorney by him, and it was therefore necessary that he should have inquired as to the mode of its execution before he could claim to hold it discharged of the conditions," was unnecessary to the determination of the case, and therefore not binding as authority.

The case of *Carrick* v. *French*, 7 Hum., 457, simply holds that, to make out an escrow, the evidence must clearly show the surety signed on an express condition, and not upon a casual state-

ment of the principal obligee that he intended to place on the paper other sureties, even if it appears that this statement was an inducement to the surety so signing. *Majors* v. *McNeilly*, 7 Heis., 294, and *Breedin* v. *Grigg*, 8 Bax., 163, were cases where the notes in question had been placed in the possession of their respective payees upon an understanding with these payees that they were conditionally delivered, and, in each case, it was properly held that the payees took them subject to the conditions imposed.

These are the Tennessee cases relied upon by the appellee, but we think it apparent that the decree in this case cannot safely rest on their authority.

The case of *Quarles* v. *Governor*, 10 Hum., 121, while not cited by the appellee, is frequently referred to as an authority for the general rule invoked by the surety in this case, and it is, therefore, proper to refer to it. In that case it was held that a surety on a bond for a Sheriff, received, approved, and ordered to be spread on the records of the Court, might show, when sued on this bond, he conditionally signed and delivered it to the Clerk of the Court. The decisions in *Bryan* v. *Glass*, 2 Hum., 390; *Governor* v. *Organ*, 5 Hum., 161; and *Ezell* v. *Justices*, 3 Head, 587, are not in accord with that case, and, as is said in *Amis* v. *Marks*, 3 Lea, 573, "perhaps announce the safer and better rule." Independent, however, of the question of the right of the surety in a summary proceeding, as that was, to impeach a

judicial record by parol proof, it may be this case was rested by the Court upon the ground that the Clerk of the Court, who took the bond from the surety with full knowledge of the condition attached, was the statutory agent of the payee of the bond, and that notice to him was notice to his principal. Unless this be so, we do not believe the case to be reconcilable with the best considered authorities.

The appellant insists the question before us has been closed in this State ever since the opinion in *Jordan* v. *Jordan,* 10 Lea, 124. That was a suit by a *bona fide* holder of commercial paper, who recovered against a surety undertaking to defend upon the ground of his conditional delivery to the principal debtor, and of the latter's subsequent delivery of the note sued on, in violation of the condition, to the payee. The counsel for appellee, while conceding the soundness of the conclusion reached when confined to the subject of litigation in that case, yet urges that that decision rests upon an exception to the general rule made by the Courts in the interest of commerce, and that it cannot be relied upon as authority where the liability of a surety upon a non-negotiable instrument, delivered in violation of like conditions, is called in question. While it is true the case finally rests upon the fact the note sued on was negotiable, and passed, for value, without notice, and before maturity, into the hands of the payee, yet the reasoning and illustrating of the opinion

embraces both negotiable and non-negotiable paper. The Court say: "The law makes the principal the agent of the sureties for the special purpose of delivering the instrument.. * * * It is a case for the application of the ordinary principle of agency, that when the agent is clothed with apparent authority to do the act, he may bind the principal within the limits of that authority, whatever may have been his private instructions." In other words, the surety has innocently but negligently placed it in the power of his agent to inflict a loss upon another, who is equally innocent, and in no respect guilty of negligence. In such a case, the effect of the holding in *Jordan* v. *Jordan*, *supra*, was, whenever a loss occurred as the result of such negligence, to apply the rule announced in *Lickbarrow* v. *Mason*, 2 Dun & East, 21, that, "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled the third person to occasion the loss must sustain it."

Conceding, however, that the announcement of this rule was dictum in that case, still the question recurs, Is the rule sound in principle and warranted by authority? That it is sound in principle we have no doubt, and that it should be applied in all cases like the one at bar is sanctioned by the great weight of authority, as we shall now see.

In *State* v. *Potter*, 63 Mo., 212 (Am. Rep., 21, p. 440), the Court says: "Here the surety who

defends this action had invested the principal with an apparent authority to deliver the bond, and there was nothing on the face of the bond, or in any of the attending circumstances, to apprise the official who accepted it that there was any secret agreement which forbade its acceptance. The surety is alone at fault in the matter, as, but for his unwarranted trust in Turley, the latter would never have had it in his power to occasion the loss which the beneficiaries of this bond must suffer if the defense made by the surety is successful. * * * Surely, then, a more opportune application of the language of Lord Holt, in *Hodge* v. *Nichols*, 1 Salkeld, 289, could not occur than to the case before us that, 'Seeing somebody must be the loser by the deceit, it is more reasonable that he that employs and puts trust and confidence in the deceiver should be loser than a stranger.' "

In *McCormick* v. *Bay City*, 23 Mich., 457, where the surety undertook to escape liability on the bond, signed and delivered under similar circumstances, the Court says: "It was in his (the surety's) power to insert the names of the desired sureties, and to make the bond joint, and not several. He took none of these precautions. On the other hand, he put it in the power of the principal debtor to get as many or as few sureties as he chose, and to deliver the bond in a shape and under circumstances raising no suspicion." To the same effect are the cases of *Webb* v. *Baird*, 27

42—9 P

Ind., 368; *State* v. *Garten*, 32 Ind., 1; *State* v. *Peck*, 53 Maine, 284, and *Millet* v. *Parker*, 2 Met. (Ky.), 608.

In *Nash* v. *Fugate*, 24 Grattan, 202, the Court approvingly quotes and adopts the language of Judge Redfield, as follows: "Where the surety intrusts the bond to the principal obligor in perfect form, with his own name attached as surety, and nothing on the face of the paper to indicate that others are expected to sign the instrument, in order to give it full validity against all the parties, he makes such principal his agent to deliver the same to the obligee, because such is the natural and ordinary course of conducting such transactions; and if the principal, under such circumstances, gives any assurances to the surety in regard to other sureties, or performing any other condition which he fails to perform, the surety, giving confidence to these assurances, must stand the hazard of their performance, and he cannot implicate the obligee in any responsibility in the matter, unless he is guilty of fraud or rashness in accepting the security."

In *Dair* v. *United States*, 16 Wallace, 1, the Supreme Court of the United States adds the great weight of its sanction to this view, and applies the rule of estoppel *in pais* to a surety in such a case as the one before us, and shows that the case of *Pawling* v. *United States*, 4 Cranch, 219, which was referred to by the appellee as supporting the opposite view, has been misinter-

preted, . and is, in fact, no authority against the rule announced in the former case.

As against the rule so announced, only a limited number of Courts have ranged themselves. In *Peoples* v. *Bostwick,* 32 N. Y., 445, the opposite rule—that is, the one invoked in this case, and upon which the decree of the Chancellor was predicated—was distinctly stated and adopted, but the authority of that case was much weakened, if not effectually destroyed, by the doubt as to its soundness, suggested in *Russell* v. *Frees,* 56 N. Y., 67. The case of *Smith* v. *Kirkland* (Alabama), 1 Southern Rep., 276, is in accord with *Peoples* v. *Bostwick, supra,* but it rests alone on the authority of earlier Alabama cases. In Georgia the same view is taken in *Crawford* v. *Foster,* 6 Ga., 202.

We are satisfied to adopt the rule, as found in *Dair* v. *United States, supra,* and *Nash* v. *Fugate, supra,* and other similar cases, already referred to, as resting on sound principle, and sustained by the weight of authority. We agree with the Court in *Nash* v. *Fugate,* when it says "it is impossible to foresee the mischief of adopting a different rule." For "one obligee, having in his possession an instrument signed by responsible parties, to all appearance complete and valid, may, at any distance of time, be confronted and defeated by a secret parol agreement between the principal obligor and some one of the sureties, of the existence of which he had not even a suspicion. How is it possible to provide against these secret agree-

ments? How are they to be met and disproved? In the nature of things, the obligee can offer no evidence besides the bond, as the knowledge of the condition is generally confined to the principal obligor and his sureties."

It is proper to add that, in all such cases, to give the holder the benefit of the rule here announced, it must affirmatively appear, as it does in this case, that he took the instrument in question without notice of its conditional delivery.

The decree of the Chancellor is reversed, and the cause is remanded for an account upon the principles of this opinion.