DANIEL H. HORTON vs. FRANK C. STONE et al.

JUNE 16, 1911.

PRESENT: Dubois, C. J., Johnson, and Parkhurst, JJ.

(1) *Evidence. Bonds. Res Gestœ.*

In an action against a surety upon a bond, the evidence of a witness who saw defendant sign the blank bond, as to the signing of the bond and defendant's stipulations at the time is competent as a part of the *res gestœ.*

(2) *Replevin. Bonds. Agency. Principal and Surety. Res Adjudicata.*

A replevin bond was signed, "Frank C. Stone by Henry M. Wood," and by two sureties. It appeared that the bond was signed by the defendant surety in blank at the request of Wood and delivered to Wood upon the express stipulation that it was signed for Stone and only on condition that it was to be sent to Stone who was away to be signed by him as principal, and that he (defendant) never authorized its delivery to anyone except on this express condition. The bond was signed by Wood, as above, and delivered to the officer:—

*Held,* that (1) the bond was not a valid statutory bond. This fact having been so decided by both the district and superior courts, without exception or objection to such decision is *res adjudicata* in the case at bar, and an inspection of the bond shows that it is not in compliance with Gen. Laws, 1896, cap. 272, § 3 (now Gen. Laws, 1909, cap. 336, § 3).

(3) *Bonds. Delivery. Escrow. Principal and Sureties.*

*Held,* further, that no valid delivery of the bond was ever made so as to make it binding upon the surety, but the delivery was simply in *escrow,* conferring no authority upon Wood to sign Stone's name and deliver the bond, in its invalid form to the officer.

(4) *Bonds. Sureties Not Bound Unless Principal Signs.*

*Held,* further, that the bond without the signature of the principal obligor was void, as to the sureties.

(5) *Bonds. Putting Obligee on Notice. Replevin.*

Where an officer is tendered a bond in replevin not in accord with the statute, the execution thereof in the name of the principal by a third party, is sufficient to put him upon inquiry whether the sureties who had signed the bond could be held thereunder.

DEBT ON BOND. Heard on exceptions of plaintiff and overruled.

PARKHURST, J. This is an action of debt on bond, originally brought against Frank C. Stone as principal, and Walter W.

Smith, and William E. Arnold, named as sureties in a replevin bond, naming the plaintiff as obligee, attached to a writ of replevin wherein Frank C. Stone was named as plaintiff, and Daniel H. Horton was named as defendant.

Upon this writ of replevin certain personal property, which Horton had attached as the property of Henry M. Wood, in a suit of Frank Maroni *v.* Henry M. Wood, was taken from Horton's possession, and turned over either to Wood or Smith, and finally through one or the other of them came into the possession of Frank C. Stone.

The replevin bond was dated April 30th, 1902, and sets out Frank C. Stone, of Taunton, Massachusetts, as principal, and William E. Arnold and Walter W. Smith, both of Providence, as sureties. The bond purports to be signed: Frank C. Stone by Henry M. Wood; William E. Arnold; Walter W. Smith; and to be sealed. This writ of replevin was entered in the District Court of the Sixth Judicial District, and on May 22nd, 1902, the entry was made: "Writ dismissed (insufficient bond)."

The writ in this present action was served upon Frank C. Stone and William E. Arnold, but Walter W. Smith, co-surety, not being found and having no last and usual place of abode within the officer's precinct, was not served with process. Demurrer to the original declaration was sustained upon the grounds that the declaration did not allege that Henry M. Wood had authority to execute said bond in behalf of Frank C. Stone, and also because it does not appear in said declaration that said bond was executed by said Frank C. Stone in person or by any person in his behalf. Certain other grounds of demurrer were overruled, and it was held that the bond was not sufficient as a statutory bond; the question whether the obligors who executed the bond were liable on the same as a common law obligation, was left to be determined upon evidence as to the obligation of the principal and as to whether the sureties delivered it under such circumstances as to make it obligatory upon them alone. The bond is a joint and several bond. The amended declaration is in two counts against William E.

Arnold only, one of the sureties, and his demurrer thereto was overruled.

The case at bar, upon the amended declaration, against William E. Arnold alone, was tried in the Superior Court before a jury, on November 10, 1909, and a verdict for the defendant was directed by the trial judge, on the ground that it affirmatively appeared that the defendant Arnold (having, as the evidence showed, signed the bond in blank at the request of Henry M. Wood, and delivered the same to Wood upon the express stipulation that he was doing it for the sake of Stone, the plaintiff in replevin and the principal in the bond, and that Stone was to sign as principal), relied on Stone's signing or somebody for him so that his signature should be a valid signature to the bond; and that, as this was not done, the defendant was not liable.

The declaration was in two counts, and the defendant pleaded *non est factum* to both; with an additional plea to the second count that Henry M. Wood, the defendant in the original action where the attachment was made, was adjudged a bankrupt on May 4th, 1906, and that Frank Maroni, creditor, was named in the schedules, and that said bankrupt was duly discharged from bankruptcy on October 8th, 1906. The date of the writ in this present action of debt on bond was March 26th, 1906.

It will not be necessary for us to consider the effect of this latter plea, as the same and the evidence adduced in support thereof are entirely immaterial, in our view of the case.

The plaintiff duly excepted to the decision of the court below in granting the motion of the defendant for the direction of a verdict and in directing the same, and has duly brought his bill of exceptions to this court, setting forth said exception and also certain other exceptions, relating to the admission of testimony regarding the bankruptcy and discharge of Henry M. Wood, in support of the plea above referred to (and which, as above stated, we shall disregard as immaterial so far as that plea is concerned); and certain other exceptions relating to the admission of the testimony of Henry M. Wood as to a certain

conversation had between Wood and the defendant Arnold regarding the execution of the replevin bond by Arnold.

It appears in evidence, that the property attached as the property of Wood in the suit of *Maroni* v. *Wood*, was in the custody of Wood at the time of the attachment; but there is no conclusive evidence whether it was owned by Wood or Stone. Stone was in the South, at that time; and Wood, claiming that it was the property of Stone, and to protect Stone's interest, went at once to a lawyer to procure a writ of replevin. He obtained a printed blank writ of replevin with blank bond attached to it in the usual statutory form, and took it to the defendant Arnold, without any of the blanks having been filled out, and asked Arnold to sign it as a surety, no seals being then thereon. Wood testifies as follows, in regard to his conversation with Arnold (p. 19): "Q. 9. What was said between you and Mr. Arnold at the time of the signing of this paper in relation to the signing of the paper? A. I took this paper to Mr. Arnold and asked him to sign it. I told him it was a bond and he asked if it was for me, and he said if it was he wouldn't sign it, and I told him no, it was for Frank C. Stone, and he asked if Frank C. Stone was going to sign it, and I said he was, and he said, 'if Stone is going to sign it I will sign, otherwise I won't.' Q. 10. Who is this Mr. Stone? A. He is a lumber merchant or agent. Q. 11. Do you know whether he is related in any way to Mr. Arnold? A. I think he is. Q. 12. Now, I will ask you if you will look at those other papers that are before you. Just a moment, in relation to this paper. After Mr. Arnold signed it what did you do with it? A. I took it back to Mr. Bean, and he put on the seals and got Mr. Smith to sign it . The seals were not on it when Mr. Arnold signed it because he didn't have any in the office. Q. 13. Was the bond filled out or was the bond blank? A. It was entirely blank, just simply the printed matter on it when I took it to Mr. Arnold." It is this conversation which is the subject of plaintiff's exception above referred to. We find no error in its admission. Wood was in fact the only witness who saw the defendant sign the blank bond, and it was entirely proper that

he should be examined in relation to the facts within his knowledge relating to the signing of this bond by the defendant, and to the defendant's stipulations at the time; these facts were properly a part of the *res gestæ*, and their exclusion would have been improper.

The defendant Arnold was examined as a witness in his own behalf upon the same matters as were the subject of inquiry from Wood, and testified fully as to his conversations with Wood at the time of his signing the bond and as to all the circumstances connected therewith; in effect Wood's testimony was corroborative of Arnold's. The defendant repeatedly says that when Wood brought him the blank bond and asked him to sign as surety, he asked Wood if it was for him (Wood), or for Stone that he was to sign, and was informed that it was for Stone, in order to replevy Stone's property from an attachment; that he distinctly told Wood over and again that he would only sign it for Stone, and on condition that Stone was to sign it as principal; that Wood fully understood that the bond was to be signed by Stone, before delivery, and that only on this understanding did he sign the bond and allow Wood to take it away; that he (defendant) never delivered the bond to the plaintiff, nor authorized its delivery to any one except upon this express condition; that he did not know whether or not it had ever been delivered, and never saw it afterwards, until it was produced in court; that he knew Stone was away at the time he signed it, and it was the distinct understanding with Wood that the bond was to be sent to Stone to have his signature also placed thereon. There is not a word of testimony to contradict these statements of Wood and Arnold as to this understanding and condition that the bond was to be signed by Stone as the principal obligor before it should be delivered and become a valid obligation as against the defendant.

Under these circumstances, and in view of the fact that the bond was not signed by Stone, but was in fact signed "Frank C. Stone by Henry M. Wood," and in that form was allowed by Wood to pass into the hands of the officer serving the writ of replevin, we are of the opinion (1) that the bond itself, in

that form was not a valid statutory bond; (2) that no delivery of the bond was ever made, so as to make it a binding obligation upon this defendant; (3) that the bond, without the signature of the principal obligor, is void, as to the sureties.

(2)    1.   The bond is not a valid statutory bond.   It was so held both by the district court, in dismissing the replevin suit, and also by the Superior Court, in this suit, after a hearing upon demurrer; no exception or objection was taken to either decision, and so this point is *res adjudicata* so far as this case is concerned.   Furthermore, a mere inspection of the statute regulating replevin suits (Gen. Laws, 1896, chap. 272, § 3, now re-ënacted in Gen. Laws, 1909, chap. 336, § 3), which reads as follows:   "Sec. 3.   The officer charged with the service of any such writ shall, before serving the same, take from the plaintiff or some one in his behalf a bond to the defendant with sufficient sureties in double the value of the goods and chattels to be replevied."   .   .   .   &c., shows that the bond is not the bond either of the plaintiff or of some one in behalf of the plaintiff; it is on its face imperfect and incomplete, in that it purports to be executed in the name of the plaintiff by a third person who is not shown to have had any authority whatever to bind the plaintiff in this way.   Furthermore, the evidence shows that the plaintiff in replevin was out of the state at the time the bond was signed and knew nothing about it.   If Wood wished to give bond on behalf of the plaintiff in replevin, under the statute, he should have given bond in his own name in behalf of the plaintiff, and that would have complied with the statute. (See *Dunbar* v. *Scott*, 14 R. I. 152).   As it is, neither the plaintiff in replevin (Stone) nor Wood is bound by the bond as attempted to be executed.   The plaintiff in this case, Horton, therefore was not bound to surrender the goods under attachment in his hands, for he should have seen that the bond was not in accord with the statute; and the form of the bond with this attempted execution thereof was at least sufficient to put him upon inquiry whether the sureties who had signed the same could be held thereunder.

(3)    2.   We are of the opinion that no valid delivery of the bond

was ever made, so as to make it a binding obligation upon this defendant. As shown above, it is the undisputed testimony that the defendant, when he signed as surety, at the request of Wood, did so upon the express condition that the plaintiff in replevin, Stone, should sign the bond as principal before it should become binding. The delivery of the bond upon this condition to Wood was a mere delivery *in escrow*, and Wood had no authority to deliver this paper to anybody until it had been signed by Stone. The mere fact of the signature by the defendant upon the blank form, and its delivery to Wood, could, at most, only be held to authorize Wood to have the blanks filled so as to make it a valid replevin bond for the purposes of the suit according to the statute; it certainly could not be held that there was any implied authority conferred upon Wood to sign Stone's name to it without authority, even if there had not been the express stipulation that it must be signed by Stone.

The delivery to Wood then, he being a third party and a stranger to the suit, being a mere delivery *in escrow*, conferred no authority upon Wood, to sign Stone's name by himself, and to deliver the bond in this insufficient and invalid form to the officer who served the writ of replevin, so as thereby to make a valid delivery to such officer and so that such delivery would enure to the benefit of this plaintiff. The circumstances of this case, involving the attempted delivery of a bond invalid and incomplete on its face, bring it clearly within the doctrine laid down by the Supreme Court of the United States, in *Pawling* v. *United States*, 4 Cranch. 219, which was a suit upon a bond given by a collector of internal revenue. In that case it appeared that the principal obligor and four sureties signed the bond; that two other sureties were named in the bond but did not sign; that the bond after signature by the four sureties was by them delivered to Ballinger, the principal obligor, with the express condition that it should be executed by the other two sureties before delivery to the supervisor of the revenue; and that Ballinger, without authority and in violation of this express condition, delivered the bond. It was

claimed by the sureties, and evidence was given to the effect,. that the delivery upon said condition to Ballinger, the principal obligor, was merely a delivery *in escrow;* that Ballinger had no right to deliver the bond to the supervisor, until the other two sureties had signed. Upon demurrer to the evidence it was held that evidence of the facts stated, if believed by the jury, would warrant a verdict that the bond was delivered on condition; and that the condition not having been performed, the bond, as to the sureties, remains as *in escrow.* Again, in the case of *United States* v. *Leffler,* 11 Pet. 86, which was an action on a tax collector's bond, the evidence of the principal obligor, Curtis, was offered by the surety and admitted by the circuit court, in support of the plea of *non est factum,* showing that the sureties executed the. bond under the impression, and on the condition that the principal obligor could procure the signatures of other persons to the same, and they were not so procured. The jury found a verdict for the defendants; and upon exceptions in the Supreme Court, raising the question of the competency of the evidence, it was held that, inasmuch as the principal obligor, Curtis, having suffered judgment to go against him in the suit, and having been arrested, and afterwards discharged from custody under the insolvent laws, prior to giving his deposition had been released by the defendants from all obligations to them as co-obligors on the bond in suit, he had no interest in the event of the suit, and his testimony was competent. And the judgment of the circuit court was affirmed.

In the case of *Dair* v. *United States,* 16 Wall, 1, the court found that the bond was perfect on its face, and apparently duly executed by all whose names appeared therein and delivered to the obligee without notice of any condition, as claimed by the sureties in defence, that other sureties should sign the bond; and so, that such defence was not available to the sureties. In commenting upon and distinguishing the case of *Pawling* v. *United States,* 4 Cranch, 219, the court says, as follows (p. 5): "The case of *Pawling et al.* v. *The United States,* has been cited as an authority against the position taken in this

case; but it is not so, because the additional securities to be procured in that case were named on the face of the bond, and this fact is stated in the plea. If the name of Joseph Cloud appeared as a co-surety on the face of this bond, the estoppel would not apply, for the reason that the incompleteness of the instrument would have been brought to the notice of the agent of the government, who would have been put on inquiry to ascertain why Cloud did not execute it, and the pursuit of this inquiry would have disclosed to him the exact condition of things.

"In any case, if the bond is so written that it appears that several were expected to sign it, the obligee takes it with notice that the obligors who do sign it can set up in defence the want of execution by the others, if they agreed to become bound, only on condition that the other co-sureties joined in the execution." And to the same effect, see *Fletcher* v. *Austin*, 11 *Vt.* 447; *Bibb* v. *Reid*, 3 Ala. 88; *Sharp* v. *United States*, 4 Watts. (Pa.) 21; see also, recognizing the same principles,— *Herdman* v. *Bratten*, 2 Harr. (Del) 396; *Lovett* v. *Adams*, 3 Wend. 380; *Ward* v. *Churn*, 18 Gratt. 801; *Newlin* v. *Beard*, 6 W. Va. 110, 121, *et seq.; Stuart* v. *Livesay*, 4 W. Va. 45; *People* v. *Bostwick*, 32 N. Y. 445, and *Fitts* v. *Green*, 3 Dev. Rep. (N. C.) 291.

(4)   3.   We are further of the opinion that the bond, without the signature of the principal obligor, is void, as to the sureties. In *Bean* v. *Parker*, 17 Mass. 591, which was a *scire facias* against the defendants as sureties upon a bail bond given to release a defendant from arrest in a civil suit, it appears that the name of the defendant, as the principal debtor appeared in the body of the bond; that the bond on its face purported to be executed by the defendant, and a seal was affixed and a place left for him to sign opposite the seal, but that he did not sign the bond, only the signatures of his sureties appearing thereon. It was held that the bond was void as to the sureties, the court saying (p. 604): "And it appears it was never signed nor sealed by *Aiken*, who should have been principal; the two defendants being only his sureties, as appears by the tenor of the instru-

ment. Now, we think it essential to a bail-bond that the party arrested should be a principal: it is recited that he is; and the instrument is incomplete and void without his signature. The remedy of the sureties against the principal would wholly fail or be much embarrassed, if such an instrument as this should be held binding. Suppose they wish to arrest the principal in some distant place, or in some other state, what evidence would they carry with them that they were his bail? There is nothing to estop him from denying the fact, nor any proof that it was true. In a suit against him, they would be unable to prove that he was ever arrested, or had ever given bond, except by the return of the officer; and that would not prove that *they* became bail, but only that bail was taken. By our statute before cited, the bail are all along considered as *sureties;* and a principal is recognized in every section."

In *Wood* v. *Washburn*, 2 Pick. 24, it was held that where an administration bond was not executed by the administrator, the sureties were not liable, referring to *Bean* v. *Parker, supra.*

In *Russell* v. *Annable*, 109 Mass. 72, it was held that a bond given under statute for the dissolution of an attachment of partnership property, and executed in the name of the firm by only one of two partners named as principals therein, cannot be enforced against a surety without evidence of the assent of the other partner to its execution. On page 74 the court says: "The bond purports to be the joint and several contract of certain persons named therein as principals, and the defendant and George M. Stevens as sureties. The defendant's undertaking is only that the principal obligors shall fulfill the obligation which by the terms of the bond they have assumed. But if the bond was not binding upon both Dennett and Pottle (as it was not, for want of due and proper execution of the instrument on their part), they assumed no obligation, and it was not binding upon the sureties. It was essential to the bond that the principals should be parties to it; it is recited that they are so, and the instrument is incomplete and void without their signature. The remedy of sureties against their principals might be greatly embarrassed, if such an instrument as this

should be held binding. There is nothing to estop any member of the firm, who did not sign it, from denying that he was a party to it, and it was no part of the defendant's contract that he should be surety for one member of the firm, and not for both. The instrument is incomplete without the signature of each partner, or proof that the signature affixed had the assent and sanction of each of them. The sureties on a bond are not holden, if the instrument is not executed by the person whose name is stated as the principal therein. It should be executed by all the intended parties. *Bean* v. *Parker*, 17 Mass. 591. *Wood* v. *Washburn*, 2 Pick. 24."

To the same effect, see *Goodyear, &c.* v. *Bacon*, 151 Mass. 460, citing all of above cases. *Dole Bros. Co.* v. *Cosmopolitan Preserving Co.*, 167 Mass. 481, citing above cases. See also,— *Ney* v. *Orr*, 2 Mont. 559, citing with approval many of the cases *supra*. And these last cited cases pointedly distinguish the cases where a bond perfect upon its face and apparently duly executed by all whose names appear thereto, purported to be signed and delivered and was actually delivered without a stipulation.

Plaintiff's counsel cites a number of cases to the effect that the omission of the name of the principal as one of the signers of a bond, even where his name appears in the body of the bond as principal, is a mere technical defect, and will not release the sureties, except in case where the sureties sign upon conditions, known to the obligee, that the bond is not to take effect until signed by the principal. It is not necessary to review these cases. In most of them, where a statutory or official bond was required, it was found that the statute or regulation under which the bond was given did not require that the principal should personally sign the bond; and in all of them it was found that the principal, being elected or appointed to an official position and bound to perform official duties according to law, was just as much legally bound for his defaults as if he had signed the bond and equally liable to reimburse his sureties for any moneys required to be paid by them to make good his defaults, whether he signed the bond or not. The only case

cited by the plaintiff's counsel in support of the proposition above set forth, which seems to be directly applicable to the case at bar, is the case *Ney* v. *Orr*, 2 Mont. 559, *supra*, and that is directly contrary to the plaintiff's contention, inasmuch as it holds that an appeal bond was not a good statutory bond on its face, because not signed by the principal obligor; that the obligee had notice of the insufficiency of the bond on its face when it was filed; and that the sureties were not bound.

For the reasons above set forth, we are of the opinion that the decision of the court below in directing a verdict for the defendant was fully justified, both by the law and by the evidence before him. The plaintiff's exceptions are overruled, and the case is remitted to the Superior Court with direction to enter its judgment for the defendant upon the verdict.

From the record in this case it appears that Mr. Justice Sweetland, while a justice of the Superior Court, presided at a hearing in said case which involved, to some extent, the questions now before this court. He is of the opinion that he is disqualified under the statute from taking part in the consideration and determination of the case, and has withdrawn from such consideration and determination.

*William M. P. Bowen*, for plaintiff.
*Harry C. Curtis*, for defendant.