| 6 | 453 |
| 94 | 569 |

CHARLES G. EVERTS, Appellant,

*vs.*

EVERY AGNES and LYMAN P. SWIFT, Appellees.

APPEAL IN EQUITY FROM THE MILWAUKEE CIRCUIT COURT.

The fraudulent procurement of a deed deposited as an escrow, from the depositary by the grantee named therein, will not operate to pass the title; and a subsequent purchaser from such grantee, without notice, and for a valuable consideration, derives no title thereby, and will not be protected.

The legal use and effect of an escrow are well known, and it is not negligence in the vendor in any legal sense to deposit an escrow to be delivered on performance of the conditions attached.

The case of Everts vs. Agnes and Swift, 4 Wis., 343, affirmed.

The bill alleges that some time previous to 1851 complainant Everts was seized in fee of the equal undivided one-half part of certain real estate in Milwaukee county, which had been formerly purchased by complainant and one Peter Bender of Agnes; and that being so seized, complainant made a written agreement, on the 31st of May, 1851, with said Agnes, to convey to him complainant's said interest in said premises, and the mill thereon, "for the consideration of five hundred and seventy-five dollars, and one thousand feet of butternut boards; "said boards to be paid soon," fifty dollars down, fifty dollars in September then next following, three hundred dollars in one year from the date of said agreement,. and one hundred and seventy-five dollars in two years therefrom with interest at ten per cent., unless all paid within four months; and security to be given for the payment, if not paid down; and said Agnes to settle all claims against the said complainant for which the property conveyed was holden, and to clear said complainant's land on the lake."

The bill further alleges, that in pursuance of said agreement, on the 2d day of June, 1851, complainant made, and he and his wife executed, a quit claim deed to Agnes of the said premises, and showed the same to Agnes for him to determine whether it was such a deed as he would accept; and at the request of said Agnes, he allowed him to take said deed to one Peter Bender, for said Bender to determine whether he ought to accept it, promising, if Bender said it was right, to accept it, and if not, to return it, the complainant informing Agnes at the time, that a full description was not given in the deed, and promising to complete it in case it was otherwise defective. That after going to Bender with the deed, Agnes informed the complainant, that it was not such a deed as he could accept, and requested complainant to go to one F. F. Zettler, where a new deed was drawn and the first one returned, the second being deemed satisfactory by all concerned.

The bill further alleges that the second deed was executed by complainant and wife, and was delivered by complainant to said Zettler with instructions not to deliver it to Agnes until Agnes should execute and deliver his notes and mortgages on his real and personal property to secure the payment of the consideration; also, that complainant delivered to said Zettler, together with said deed, a bond or article of agreement binding the said complainant to pay about one hundred and fourteen dollars on a certain mortgage on said property, for twelve hundred dollars, subject to the balance of which mortgage said Agnes purchased said premises; such bond or article of agreement to be delivered to Agnes by Zettler on the same conditions as the deed. The bill further alleges that thereafter, Agnes fraudulently obtained possession of the deed and bond, by inducing Zettler to deliver them up, and put said deed on record without making any payment or offering any security; and that afterwards, in order to defraud complainant, Agnes conveyed the premises to the defendant, Lyman P. Swift, who took the conveyance fraudulently with notice of the manner in which the deed had been procured by Agnes, and of complainant's right. The prayer of the bill was for the setting aside and

cancellation of the conveyance, and for specfiic performance by Agnes, and general relief. To this bill both the defendants made their separate answers.

The answer of the defendant, Agnes, admits the execution of the alleged agreement, claims that in pursuance thereof complainant executed and delivered the first deed mentioned in the bill, to Agnes, as his deed, and that he (Agnes), accepted it as such, but claims that as he did not understand English very well he obtained a promise of the complainant before leaving his house, that if upon examination the deed should be found defective, he should have another; it sets up that the deed was a quit-claim deed; that on showing it to Bender he decided that the description of the premises was too general and indefinite; that the second deed was drawn by Zettler under Bender's directions; that Everts came there and while the second deed was being drawn, took up the first deed, and that he (Agnes), demanded it back, saying that he would not give it up till he got the new one; and that Everts accordingly gave it to Zettler, to be retained until the new one was delivered. The answer further states that the second deed conveyed the undivided half of the mill property [therein described] to Agnes, subject to a portion of a certain mortgage executed by Everts and Bender, to the amount of about ten hundred and eighty-five dollars; and that it was agreed by the parties that Everts was to execute and deliver to Agnes, together with the new deed, a bond, requiring him to pay about one hundred and fourteen dollars, balance of the principal ot the mortgage and interest. That he (Agnes) gave the new deed, which had been assented to by Everts, to Zettler, to take to Everts' house and get it executed and acknowledged, and also gave him the first deed, with express instructions not to give it up to Everts till he got the new one, and the bond. The answer further states upon information, that Zettler had the new deed executed, gave up the old one, and gave a receipt to Everts for the new deed, expressing that it was to be given up to Agnes, on the performance of certain conditions, to said Agnes unknown; that this took place on the 3d day of June, 1851; that he

(Agnes) immediately thereafter entered into possession and worked the mill with Bender, till he sold out to Swift; denies the allegations of the bill concerning the execution and delivery of the deed, except as above stated ; says that in October following he, (Agnes), persuaded Zettler to go to a lawyer, (Doran), who on a statement of the facts advised Zettler that he had no right to retain the deed, and that Zettler thereupon gave it up, and that it was put on record. The answer further denies all misrepresentations to Zettler to induce him to give up the deed ; claims that the delivery of the first deed was complete and unconditional, and that his acceptance of it was the same ; that the promise of the complainant to make a new one was after such delivery and acceptance, and at his, (Agnes), request; denies that he agreed to give security by note or mortgage, or any other security, except his own responsibility ; admits the sale to Swift of a part of the premises in October, 1851, but denies ever having informed Swift of the facts concerning the execution and delivery of the deeds from Everts.

The answer sets up further, that it was understood between the parties at the time of the first agreement, that Everts owned an undivided half of a tract of about sixty-five acres adjoining the mill, and that this was also to be conveyed by Everts as a part of the mill property ; alleges that this tract was bought partly with funds raised by mortgage on the mill by Everts and Bender for their joint use, but that the conveyance was taken to Bender alone; alleges that it was on the faith of having half of these sixty-five acres that he made the agreement with Everts, and that without this the mill property conveyed to him by Everts was not of the value of the consideration agreed to be paid by him, and that for the want of a conveyance of this, he had been damaged, &c., and submitted that he ought not to pay the consideration agreed upon till such a conveyance was executed and delivered by complainant; denies all fraud, combination, &c.

The amended answer of Lyman P. Swift states in substance that on the 8th day of Oct., 1851, he purchased of Agnes the property in dispute, who gave him a warranty deed therefor,

Everts vs. Agnes et al.

which was recorded Oct. 8th, 1851. The consideration paid was about one thousand dollars—six hundred dollars by assigning to Agnes a note and mortgage upon 120 acres of land in Jefferson county, and Swift's note for $200 payable in 30 days, and which Swift afterwards paid to Agnes' assignee; also in cash to Peter Bender $180, which Agnes owed Bender; and the residue of the purchase money Swift paid to sundry creditors of Agnes about the time of getting the deed. That within a day or two after receiving the note and mortgage for $600, and Swift's note for $200, Agnes transferred them both to persons who were strangers to all equities between Everts and Agnes, and that he, Swift, at the time of said purchase, had no notice of the equities of Everts, nor until three months after, at the time of filing of the bill, and at which time he had paid all the purchase money.

At the time he made the purchase he caused the records to be examined, obtained full abstract of Agnes' title, and believes he had a good title, and gave him, Swift, one, except as to the balance due on a mortgage, subject to which Swift made the purchase. Also that before he made the purchase he visited the premises, and found Agnes and Bender in possession. That Agnes had been in undisputed possession there the preceding summer, and assured Swift that his title was good. Denies all notice, at the time of the purchase and payment of consideration money, as to the manner in which Agnes got the deed from Zettler, and all notice of the conditions under which the deed was left by Everts with Zettler, or that Agnes had failed on his part in any obligation to complainant.

The answer further alleges that Everts, before any of these transactions, resided in the neighborhood of the premises, and saw Agnes in possession without objection; that the possession was given Agnes at the date of the contract between Everts and Agnes, and that Agnes held possession till he sold the premises to Swift, and Swift and his grantees have held since.

The answer also recites the circumstances of the quit-claim deed, its delivery by Everts, and his obtaining possession of it

again, substantially as related by Agnes; and sets forth that complainant was immediately informed of the fact of Zettler giving up the warranty deed to Agnes, who, within a month after, told Everts that he was going to sell the premises, but that Everts took no steps to prevent innocent persons from buying; that complainant paid nothing for the premises, bought them for a speculation, and will lose nothing by failure of Agnes to pay him. Denies that Agnes made any misrepresentation to induce Zettler to give up the deed; denies all fraud, combination, &c.

The testimony in the case sustains, substantially, the position taken in the bill of complainant, respecting the delivery of the deed to Zettler to be retained by him until the compliance by Agnes with the conditions as stated; leaves Swift's answer as to want of notice of the equities of Everts in the land unimpeached; shows that about the 5th of June, 1851, a day or two after making the sale to Agnes, Everts was taken sick, and sent the witness to Agnes to induce him to give the security as agreed, who promised to come soon; and after two or three weeks, sent again, when Agnes replied that he thought he would get the money in a few days, and pay the whole amount; said he was about to sell, and would get Everts to make the deed directly to the purchaser to whom he might sell.

It also appeared from the testimony of Zettler that Everts never consented to the giving up the deed to Agnes. That Agnes took him, Zettler, to Milwaukee to a lawyer, who advised him to give up the deed; that he replied to him that he was bound to keep the deed and not deliver it without security; but that the lawyer told him he would be liable to damages to Agnes if he did not give it up, and he consented to give it up, and a few days thereafter informed Everts that he had given it up.

Another witness testified to a conversation with Agnes, in which Agnes informed him that in going into town on the occasion alluded to, with Zettler, to induce Zettler to give up the deed, he saw Everts on the sidewalk, and had directed

Zettler's attention from him by pointing to some cows on the other side of the road ; he said if they, (Everts and Zettler), had seen each other, it might have defeated his intention of getting the deed from Zettler.

The memorandum in writing between Everts and Agnes concerning the sale of the mill was in evidence and is as follows :

" Article of agreement between C. G. Everts and Every " Agnes. The party of the first part, C. G. Everts, for and " in consideration of the sum of five hundred and seventy-five " dollars and 1,000 feet of butternut boards, as shall be " directed, when the same shall be paid or secured, as shall " hereafter be agreed. That the said Everts agrees to give a " deed of all his right and claim on the mill known as Everts' " and Bender's mill, with all the land attached to it. And the " said Agnes agrees to settle all demands against said Everts " as far as the mill is concerned, to clear the said Everts' land " on the lake, to pay the 1,000 feet of boards soon, fifty dollars " down, fifty dollars in September next, three hundred dollars " in one year from this date, and one hundred and seventy-five " dollars in two years ; if the whole should be paid in four " months, no interest, if not, ten per cent.

[Signed],        C. G. EVERTS,

Milwaukee, May 31, 1851."      EVERY AGNES.

Upon a hearing in the circuit court, December 24th, 1853, the bill was dismissed with costs as to the defendant, Swift, on the ground that he was a *bona fide* purchaser for a valuable consideration, without notice of complainant's equities.

It was also decreed that defendant Agnes should pay the amount of the purchase money, according to the agreement, &c.

From this decree the complainant appealed, and upon hearing of the cause in this court, upon the appeal, (4 Wis., 343), the decree of the court below was reversed, and the cause remanded for further proceedings, in accordance with the opinion then given.

Thereupon the defendant, Swift, filed the amended answer

above noticed, and took some further testimony; but which testimony did not substantially vary from that already given; and upon hearing the court below rendered a final decree dismissing the bill as to said Swift; from which decree the complainant again appealed to this court.

*Paine and Sons*, for appellant.

1. The deed was placed in the hands of Zettler as an escrow, to be held till Agnes gave security for the purchase money to Everts.

2. The fraud and misrepresentations of Agnes and his attorney obtained this deed from Zettler in direct violation of the conditions upon which he held it, therefore it is void, and conveyed no title to Agnes. 2 Bl. Com.; 4 Kent, 459; Greenleaf's Cruise, Vol. 5, Tit. Deed, 45, 46; *Jackson vs. Catlin*, 2 John., 248; S. C., 8 Id., 429; *Frost vs. Beekman*, 1 John. Chy. R., 296; *Jackson vs. Howland*, 6 Wend., 666; *Carr vs. Howie*, 5 Mason, 60; *Jackson vs. Sheldon*, 9 Shepley, 569; *Robins vs. Bellas*, 2 Watts, 359.

3. His deed being void, and not voidable, Agnes had no title to convey, and Swift obtained none by his deed, and cannot retain the land against the complainant, even though a *bona fide* purchaser. 1 Story's Eq., 75; *Somers vs. Brewer*, 2 Pick., 184; *Worcester vs. Eaton*, 11 Mass., 375; *Williams vs. Lamb*, 3 Bro. Chy. R., 264; *Collins vs. Archer*, 1 Russell & Mylne, 284; 4 Eng. Ch. R., 428; *Rogers vs. Sale*, Freeman's Ch. R., 84; 4 Ohio State Rep., 182.

*Waldo and Ody*, for appellee.

All parol evidence attempted to be introduced to vary or add to the original contract of Everts and Agnes, which is in writing, should be disregarded. All the conversations upon that subject tend to show, not a new contract, but a verbal variation of, or addition to the same contract, which cannot be shown by parol. 2 Phil. Ev., 277, et seq; 2 Id., 350; 1 Greenleaf's Ev., § 275, et seq.

The title passed to Agnes by the first deed, and could not

Everts vs. Agnes et al.

repass by a re-delivery of the same deed. Walker's Am. Law, 342; 1 John. Chy. R., 240; 4 Watts, 180; 2 Ohio, 267; 4 Wis., 12, *Parker vs. Kane*, and cases there cited.

If the first deed did not pass the title, the second did, and left with Everts, at most, only a right to demand from Agnes the promised security, or to avoid the deed in equity, while it was in the hands of Agnes. Even if obtained by fraud, the deed was not void, but at most voidable, as to the fraudulent party, or those affected with notice.

Swift holds the position of a *bona fide* purchaser for a valuable consideration, without notice of complainant's alleged equities, and as such will not be deprived of his title by proof of fraud practiced by his grantor upon the person of whom he purchased. 1 Story's Com., § 409, 410, 411, 434; Exception, see 1 John. Chy. R., 300, 301; Sug. Vend., 261, and notes; *Somers vs. Brewer*, 2 Pick., 184, 204; *Fletcher vs. Peck*, 6 Cranch. 133; Brown on Sales, 396; *Parker vs. Patrick*, 5 T. R., 175; *Choteau vs. Jones*, 11 Ill. 300; *Kessler vs. Zimaschitte*, 1 Texas, 50; *Williams vs. Given*, 6 Gratt., 268; *Jackson vs. Somerville*, 13 Penn. State R., 359; *Yates vs. Lansing*, 9 J. R., 415.

There is a universal principle in equity that where one of two innocent parties must suffer damage, the loss must fall upon the least vigilant, if the positions of the two are distinguishable in that respect. The law will not permit an iniquitous negligence any more than it will positive affirmative acts of fraud. A man may deceive as well by silence as by words, and whoever wittingly and silently suffers another to act upon a supposed state of facts to his injury, will be estopped from denying afterwards the existence of that state of facts. 1 Greenl. Ev., § 207; *Divol vs. Leadbetter*, 4 Pick., 219; *Bird vs. Denton*, 2 Dev. R., 179; *Governor vs. Freeman*, 4 Id., 472; *Rangeley vs. Spring*, 8 Shepley, 130; *Hicks vs. Cram*, 17 Vermont, 449; 1 Story's Eq. § 387, 388, and cases cited in the note. *McKelvey vs. Truby*, 4 Watts & Sergeants, 323; *McCormick vs. McMurtrie*, 4 Watts, 195; *Epley vs. Witherow*, 7 Watts, 163, and cases cited; *Curr vs. Wallace*, 7 Id. 394.

*By the Court*, SMITH, J. This case was fully presented, elaborately argued, and carefully considered, when before this court on a former appeal taken in the case. See 4 Wis. Rep., 343.

The only material difference between the case as now presented, and its character on the former occasion, is, that now the defendant, Swift, appears in the attitude of a *bona fide* purchaser, whereas before he did not; and the only question necessary to be now considered, is whether, under the circumstances, he is entitled to protection as such *bona fide* purchaser; or in other words, whether he derived title by virtue of his conveyance from Agnes, he having paid to the latter a valuable consideration without notice of the manner in which he obtained the deed of Everts and wife.

It certainly cannot be deemed necessary to repeat, at this time, the observations made upon this branch of the case when it was before us on the former appeal. Our views remain unchanged; except that we are more thoroughly satisfied that the intimations and reasoning then made were correct, and we are prepared now, after another careful review of all the facts and circumstances of the case, to affirm, confidently, what we then might have uttered doubtingly.

We have not the slightest doubt that the deed of Everts to Agnes was delivered to Zettler as an escrow, to be delivered only upon the performance of the conditions prescribed. That Agnes fraudulently obtained possession of the deed, and fraudulently procured it to be recorded. That no title passed to Agnes, and hence he could convey none to Swift. The latter has his remedy upon his covenant against Agnes if any there be. This is the only point necessary to be considered at this time, and we adhere to the language and the conclusion adopted when this case was under consideration before, viz.: that the fraudulent procurement of a deed, deposited as an escrow, from the depositary, by the grantee named in the deed, would not operate to pass the title; and that a *bona fide* purchaser from such grantee so fraudulently procuring the deed, could derive no title from him, and would not be protected.

It was urged that if this rule is to prevail there can be no safety to purchasers. But to this it may be answered with equal force, that if the contrary rule is adopted there will remain no protection for vendors. The legal effect and use of an escrow are well known, and have long been familiar in the conveyance of real estate. It is not negligence in any legal sense to deposite an escrow to be delivered on performance of the conditions attached. Hence the defendant can claim no superiority in equity on that ground. On the contrary it is clear to our minds that the prior equity is with the complainant, as he had the legal title as well as the equitable estate. The proof on this subject is even more clear than it was before, and leaves no doubt on our minds. We think that the complainant is entitled to relief, and that the defendant, Swift, should seek his remedy against the person who has defrauded him.

The decree of the circuit court is reversed and the cause remanded for further proceedings.