87  145
75  245

## John Stone v. Luther C. French, et al.

1. DEED, *Void for Non-Delivery.* Where a voluntary warranty deed, containing among other things the following words, to wit, "Signed, sealed and delivered in the presence of S. M.," is signed and acknowledged by the maker, and the deed is not delivered to any person during his lifetime, he intending at the time that it should be delivered and pass title *after his death, and not before,* but after his death the intended grantee, in accordance with the maker's intention, gets the possession of the deed, has it recorded, and takes possession of the land under it, *held,* that such deed has never been, in law, delivered; that no title has passed under it; and that it is void.

2. DEED, *Based on Void Deed; No Title.* And in such a case, where the person named in the deed as grantee sells and conveys the land by warranty deed to another person who is, in fact, a *bona fide* purchaser, and who afterward takes the possession of the land, *held,* that no title has passed to such purchaser as against the heirs of the deceased owner.

10—37 KAS.

*Error from Neosho District Court.*

ACTION brought by *Luther C. French* against *John Stone* and others, for the partition of certain land. Judgment for the plaintiff, at the April Term, 1885. The defendant *Stone* brings the case here. The opinion states the material facts.

*Buck & Feighan,* and *Cox & Stratton,* for plaintiff in error.
*Hutchings & Keplinger,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for the partition of 200 acres of land in Neosho county, brought in the district court of that county, on October 16, 1884, by Luther C. French against John Stone and others. The case was tried before the court and a jury, and judgment was rendered for the partition of the property, giving to the plaintiff, Luther C. French, one-seventh thereof, and to the defendant John Stone one-seventh thereof, and to the other defendants the remainder thereof. To reverse this judgment, the defendant John Stone brings the case to this court, making the plaintiff, Luther C. French, and all the defendants except himself, defendants in error.

It appears that on March 1, 1878, and prior thereto, the property in controversy belonged to Francis B. French, although he had not yet entirely paid for the same. At that time he formed the intention of giving this land at his death to his brother, Dudley S. French, unless he should sell the same during his lifetime. On March 1, 1878, he wrote a letter to his brother, Dudley S. French, in which he stated among other things the following:

"In case I should drop off you can take possession of the land and do with it as you please. When I have paid the land out, if not sold, I will make a deed to it to you, inclose it in an envelope, direct it to you to be mailed in event of death, which would make it sure to you without expense or trouble."

Nearly one year afterward, and on February 18, 1879, Francis B. French signed a warranty deed for the property to Dudley S. French, and on April 4, 1879, acknowledged the deed before S. Michaels, a justice of the peace in said county. The deed also contained the words: "Signed, sealed and delivered in the presence of S. Michaels." The deed, however, never was in fact delivered. On August 2, 1879, Francis B. French died, in the possession of and owning the land in controversy. During all this time he was a single man, and did not leave at his death any wife or child, or father or mother, but left several brothers, including the plaintiff, Luther C. French, and Dudley S. French. It does not appear that any person, except Michaels and Francis B. French, ever saw the aforesaid deed, or had the slightest knowledge thereof, until about half an hour before French died, when it was found by William Welch, inclosed in an envelope with a letter, in a cigar box, in the drawer of the table, in the house occupied as a residence by French. The following words were indorsed upon this envelope: "This deed to be placed in the recorder's office at Erie, Kansas, for record, and the accompanying letter to be mailed as per direction thereon." At the time this deed was found French was speechless and unconscious, and remained in that condition until he died, about half an hour afterward. Welch immediately telegraphed to Dudley S. French, who resided at Clinton, Illinois, and French came to Kansas, arriving on August 4, 1879, at the place where Francis B. French died. Shortly afterward, Welch delivered to French the aforesaid deed. This is the first time that French ever saw the deed; and he never heard of it until after the death of Francis B. French. On August 6, 1879, Dudley S. French filed the deed for record in the office of the register of deeds of Neosho county. Dudley S. French then took possession of the land and remained in the possession thereof until he sold the same to John Stone, the plaintiff in error. Dudley S. French was a brother-in-law to Stone, and for a time lived at his house. He was weak in body and in mind, and a part of the time could scarcely dress himself. On

June 10, 1882, he sold and conveyed this land by warranty deed to Stone, for the expressed consideration of $2,000, but for the real consideration of only $800.   He was a single man at the time.   The land was worth about $3,000.   Stone at the time did not know that there was any infirmity in the title of Dudley S. French, and for the purposes of this case he must be considered as *in fact a bona fide purchaser*, whatever the law may be.   The deed from Dudley S. French to Stone was recorded on June 16, 1882.   At some time during the summer of 1882, Stone took possession of the land, and has remained in the possession thereof ever since.   This action was commenced on October 16, 1884.   All the heirs-at-law of Francis B. French, including the plaintiff below, Luther C. French, and Dudley S. French, were made parties to the action; so also were the defendant, John Stone, and S. Michaels, and others. Dudley S. French died on January 7, 1885, after this action was commenced but before the trial was had.

It is conceded by all parties that John Stone is entitled to one-seventh of the land in controversy — that amount being admitted to be the share inherited by Dudley S. French from Francis B. French, but Stone claims that he is entitled to all the land; and whether he is entitled to only one-seventh thereof, or to all the land, is the only substantial question involved in this case.   The principal questions presented by counsel to this court are as follows: (1.) Was the deed from Francis B. French to Dudley S. French ever delivered so as to make it a valid deed ?   (2.) If not, then is John Stone for any reason entitled to more than one-seventh of the land in controversy?

There is no room for even a pretense that the deed was ever in fact delivered to Dudley S. French, or to anyone else; and there is scarcely any room for even a pretense that it was ever in law delivered.   The only grounds upon which it is claimed that it was ever delivered, are the letter of Francis B. French to Dudley S. French, dated March 1, 1878; the indorsement on the envelope found in the cigar box, on August 2, 1879; and the words contained in the deed, to wit: "Signed,

sealed and delivered in the presence of S. Michaels." Now it may be conceded that these things constitute some evidence of a delivery, but when it is shown conclusively by the other evidence that there was no delivery, these things can have no force. Besides, the letter itself shows that there was no present intention on the part of Francis B. French of conveying the land, or delivering a deed, to Dudley S. French. And it also shows that Francis B. French contemplated that he might before his death sell the land to some other person. Francis B. French never had any intention of conveying the land immediately, but it was always his intention, unless he sold the land, to retain the title thereto in himself as long as he lived, and to let the property go to Dudley S. French only after his death. This does not constitute a delivery of a deed, or a conveyance of the land. Of course there are cases where it is not necessary that there should be any actual manual delivery of the deed. A recording of the deed is sometimes considered as a delivery. So also is a delivery to a third person sometimes considered as a delivery to the grantee. And where a deed is executed by a father to an infant child with the intention that the title shall immediately pass and vest in the child, and the father retains the custody of the deed as the natural guardian of the child, the title may pass. But none of these cases is the present case; nor is the present case anything like them. Dudley S. French was not an infant, and although he was a man of weak mind, yet he was not *non compos mentis.* The deed was not delivered or recorded by Francis B. French, nor during his lifetime, and he never had any intention that the title should pass until after his death. The deed never was a deed in law, and Dudley S. French never had any right to it; nor had he any right to have it recorded; nor did it convey any title, interest or estate to him. It was not merely voidable, but it was absolutely void. The court of appeals of New York uses the following language:

1. Undelivered deed, void.

"A rule of law by which a voluntary deed executed by the grantor, afterward retained by him during his life in his own

exclusive possession and control, never during that time made known to the grantee, and never delivered to anyone for him, or declared by the grantor to be intended as a present operative conveyance, could be permitted to take effect as a transmission of the title, is so inconsistent with every substantial right of property as to deserve no toleration whatever from any intelligent court either of law or equity." (*Fisher v. Hall,* 41 N. Y. 421, 422. See also *Burton v. Boyd,* 7 Kas. 17, 31 *et seq.; Huey v. Huey,* 65 Mo. 689.)

Taking this view of the case, John Stone obtained no title from Dudley S. French, for Dudley S. French had none whatever to convey. This is unlike a case where a deed is only voidable, and a *bona fide* purchaser obtains title from the holder of the same without any notice of its infirmity. In such a case he may obtain a good title, but where the deed is absolutely void he cannot. It seems to be admitted that if the deed were forged, no person could obtain any title under it, however innocent he might be; but a forged deed is no more void than this deed. Both in this respect are precisely alike; both are equally void, and neither the record of a forged deed nor the record of an absolutely void deed can be invoked to support or bolster up a disputed title; for the record is worth no more than the original deed itself. It is only instruments that have some validity, and that may in some manner affect real estate, that can be recorded legally. There is no statute authorizing the recording of a void instrument, and it is an error to suppose that the statutes can have the effect of making valid an absolutely void instrument by permitting the void instrument to be recorded. The instrument is still void, although recorded. The record can give it no validity. As

2. Deed, based on void recorded deed, conveys no title.

tending to support the view that a purchaser of real estate from a person holding under a void recorded deed, although in fact a *bona fide* purchaser, cannot obtain a good or valid title, or indeed any title, we refer to the following authorities: *Everts v. Agnes,* 6 Wis. 453; *Tisher v. Beckwith,* 30 id. 55; *Chipman v. Tucker,* 38 id. 43; same case, 20 Am. Rep. 1; *Van Amringe v. Morton,* 4 Whar. (Pa.) 382; *Smith v. South Royalton Bank,* 32 Vt. 341;

*Harkreader v. Clayton*, 56 Miss. 383; *Berry v. Anderson*, 22 Ind. 37, 40.   The case of *Lewis v. Kirk*, 28 Kas. 497, 505, has no reference to void deeds, or to the record of void deeds.

A deed not delivered at all is a very different thing from a deed actually delivered, even though the delivery of the same may have been procured through fraud; and a deed not delivered, but wrongfully in the hands of the apparent grantee, without fault or negligence on the part of the owner of the land, is unlike a deed not delivered, but which, through the fault or negligence of the owner, has been permitted to get into the hands of the apparent grantee.   In the present case the deed was never delivered, and was not permitted to get into the hands of Dudley S. French, the apparent grantee, while Francis B. French was the owner of the land; but after Francis B. French died, and after the title to the land had passed from him to his heirs, the deed did get into the hands of Dudley S. French, the apparent grantee, but not through any fault or negligence on the part of the heirs, who were then the owners of the land.

Other points are raised in this case, but they are technical and unsubstantial, and require no comment.   To reverse the judgment of the court below for any of them would be a violation of the spirit of the civil code, and especially of §§ 140 and 304.   We think no substantial error has been committed in this case; and it is unnecessary to prolong this opinion.

The judgment of the court below will be affirmed.

All the Justices concurring.