Minshall, J.
There can be no question but that James E. Colvin waived his lien as a vendor by taking a mortgage on the granted premises and other lands of the grantee, to secure the purchase money. Such is the settled law of this state. The court’s conclusion of law as to this is correct, and not now questioned by the defendant in error. So that the only question here presented, is as to whether it erred in its second conclusion, that, upon the facts found, the mortgage of James E. Colvin, being subsequent in point of time, is superior m equity to the Schurtz mortgage. 'Priority is claimed on the ground that at the time the Schurtz mortgage was taken, James E. Colvin held the legal title to his interest in the premises, subject, however, to a legal obligation to convey to *285 James Colvin as purchaser, on his paying the purchase money or securing it to he paid. If the facts found will bear this simple construction, then there can be no question as to the correctness of the court’s conclusion of law thereon. In such case the legal title of James E. Colvin would have been notice to the world of his rights in the property; and no one could have acquired an interest in it superior to his by mortgage or otherwise. The question, however, is whether the facts as found will bear'this construction as between James E. Colvin and the Schurtzs. James E. Colvin had by a verbal agreement made in 1884, sold his interest in the premises to James Colvin, who went into possession under the agreement and was in possession at the time the Schurtz loan was made. Some time before the making of the Schurtz mortgage, James E. Colvin with his co-tenant, Silas H. Colvin, executed a deed for the land to James Colvin, the purchaser, and placed it in the hands of a third person, Howard Colvin, to be delivered when the purchase money was paid or secured by mortgage. Afterward, for the purpose of enabling James Colvin to obtain a loan of money on the land, Howard delivered the deed to him that he might obtain a description of the premises and exhibit it as evidence of his title. The facts found bear this construction and none other. It is true that from the facts found it was not to be regarded as delivered. But the law has always attached much importance to an overt act. It contravenes its spirit to allow that an act may be done with an intention contrary to the act itself. And whilst, as between parties, the intention may be shown, it seldom permits this to be done, wheré to do so would work a fraud on innocent third persons. Here, *286 whilst James Colvin was in possession of the land and of a deed to it by James E. Colvin, of whom he had purchased, the Schurtzs,' on the faith of these appearances, loaned him $6,500, and took a mortgage on the land to secure, its payment; and, as the court expressly finds, without any knowledge that the deed had ever been held as an escrow by any one, and that it was taken in good faith without any knowledge that James E. Colvin had or claimed any interest in or lien on the land.
It would seem on the plainest principles of justice, that under these circumstances James E. Colvin, as against the owner of the Schurtz mortgage, should not be heard to say that the deed had not in fact been delivered at the time the. mortgage was made, and that his equity is superior to it. He trusted Howard with the deed to be delivered when the conditions had been performed. Howard violated his trust.' He delivered it to the grantee that the latter might obtain a loan on the land by exhibiting it as evidence of his title. The loan was so obtained of persons who had no knowledge of the facts and were entirely innocent of any fraud in the matter. Who then should suffer the loss? It may be regarded as one of the settled maxims of the law, that where one of two innocent persons must suffer from the wrongful act of another, he must bear the loss who placed it in the power of the person as his agent to commit the wrong.' Or, more tersely, he who trusts most ought to suffer most. And it would seem, that the rights of the- parties in this, case should be governed by this principle, unless there is some rigid exception established by the decessions, which forbids its application where a deed is delivered in escroto.
*287 Before considering this question, it may be well to note that no importance can be attached to the fact that the deed, on the faith of which the loan was made, had not yet been recorded. A deed on delivery passes title to the land whether recorded or not. It takes effect on delivery. The object of recording a deed is to give notice to third persons, not to perfect it as a muniment of title. Where not recorded it will be treated as a fraud against third persons dealing with the land without notice of its existence; Hence, the first deed, if delivered, having been duly executed, passed the title to James Colvin. Recording it would have added nothing to its effect as a deed; and the failure to record it in no way influenced the conduct of any of the parties to the suit.
There are some cases which seem to hold that, where a deed is delivered as an escrow to a third person to be delivered on the performance of- certain conditions, no title passes if delivered without the conditions being performed; and that this is so as against an innocent purchaser from the vendee. Everts v. Agnes, 6 Wis., 463, is such a case. The argument there is that no title passes by deed without delivery; that where a deed is delivered by one who holds it as an escroio, contrary to the vendor’s instructions, there is no delivery, and consequently an innocent purchaser acquires no title. To the objection that if this be true there is no safety for purchasers, the court said that if it be not true, there is none for vendors. This seems to be a misconception of the real situation of the parties. A vendor may protect himself.' He may either retain the deed until the'vendee pays the money or select á faithful person to hold and deliver it according to his instructions. If he selects an *288 unfaithful person, he should suffer the loss from a wrongful delivery, rather than an innocent purchaser without knowledge of the facts. In purchasing land, no one, in the absence of anything that might awaken suspicion, is required, by any rule of diligence to inquire of a person with whom he deals, whether his deed had been duly delivered. Where a deed is found in the grantee’s hands, a delivery and acceptance is always presumed. Wash. Real Property, 5th Ed., 312, pl. 31. The fact that under any other rule “no purchaser is safe,” had a controlling influence with the court in Blight v. Schenck, 10 Penna. St., 285, 292. In this case the question was whether a deed had been delivered, the defendant being an innocent purchaser from the vendee of the plaintiff. In discussing the case the court used this language: “Here Curtis, who, it is alleged, delivered the deed contrary to his instructions, was the agent of the grantor. If a man employs an incompetent or unfaithful agent, he is the cause of the loss so far as an innocent purchaser is concerned, and he ought to bear it, except as against the party who may be equally negligent in omitting to inform himself of the extent of the authority or may commit a wrong by acting knowingly contrary thereto.” And the case was disposed of on this principle. /
The case on which most reliance is placed by the defendant in error, is that of Ogden v. Ogden, 4 Ohio St. 182. The facts are somewhat complicated. It seems to have grown out of an agreement for an exchange of lots between two of the parties, each being the equitable owner of his lot. The deed for the lot of one of them, David Ogden, was to be delivered by the legal owner to the other on his performing certain conditions, and was de *289 livered to a third person to be delivered on the performance of the conditions. It was delivered without the conditions being performed; and was then mortgaged by the grantee to the defendants, Watson and Stroh, who claimed to be innocent purchasers for value. But it was charged in the bill that they took their mortgages with notice and to cheat and defraud the complainant; and it does not distinctly appear whether this was true or not. From the reasoning of the court it would seem that the deed had been obtained from the party holding it in some surreptitious manner. It is first conceded ‘ ‘that if David reposed confidence in Gilbert, and he violated that confidence and delivered the deed, and loss is to fall on either David or the mortgagees, that David should sustain that loss, and not the innocent mortgagees. ” Instances are then given in which the rule would be otherwise — an innocent purchaser from the bailee of a horse, or of stolen property, or from one who had either stolen or surreptitiously obtained his deed. There is no room for doubt in either of these eases. But the court then observes that, ‘ ‘If the owner of land makes a deed purporting to convey his land to any one, and such person by fraud or otherwise procures the owner to deliver the deed to him, a bona fide purchaser from such fraudulent grantee without notice of the fraud, might acquire title to the land.” This, we think, is equally clear; but, unless the deed in the case had been stolen or surreptitiously obtained, or the mortgagees were guilty of the fraud charged, then, on the reasoning of the court, the decree should have been in their favor. If the case' is to be understood as holding differently, then it is not in accord with the later decision in Resor v. Rcdlroacl Company, 17 Ohio St. *290 139. • Here the owner of a tract of land contracted to sell it to the company, but refused to deliver the deed until paid. An agreement was then made by which the deed was placed in the hands of the president, but it was not to be considered delivered until payment had been complied with, and the company went into possession. The president wrongfully placed the deed on record, and the company then mortgaged its entire property to secure an issue of bonds. The court held the bond-owners to be innocent purchasers, and that the plaintiff was estopped from setting up his claim as against them. It might be claimed that the delivery by Resor was to the purchaser, the company; and that a deed cannot be delivered as an escrow to the vendee. The latter statement is true. But as a matter of fact it was delivered to the president of the company and not to the company itself. There is ho reason why the president could not have held it as an escrow, and under the agreement, must be regarded as having so held it. Railroad Co. v. Iliff, 13 Ohio St., 235. Watkins v. Nash, L. R., 20 Eq., 262. Ins-Co. v. Cole, 4 Fla., 359. The plaintiff trusted the president to hold the deed, and it was his wrongful.act that disappointed him.
The supreme court of Indiana in a well-considered case, Quick v. Milligan, 108 Ind., 419, the facts of which are very similar to the ease before us, held that where a deed is delivered to a third person to be delivered the grantee, who is already in possession of the land, on payment of the purchase money, and is delivered without the condition being performed that the vendor is estopped as ag’ainst an innocent purchaser to set up his title. See also, and to the same effect, the following cases: Bailey v. Crim, 9 Biss. 95; Haven v. *291 Kramer, 41 Iowa, 382; Blight v. Schenck, 10 Penna. St., 285.
It is the general, if not universal, rule of the courts, to protect the innocent purchaser of property for value, against such vices in the title of their vendors, as result from fraud practiced by them in acquiring the property. For in all such eases the party complaining is found to have been guilty of some negligence in his dealings, or to have trusted some agent who has disappointed his confidence and is more to blame for the consequences than the innocent purchaser, so that his equity is inferior to that of such purchaser. Hence, it is, that the innocent purchaser for value from a fraudulent grantee, is always protected in his title as against the equity of the wronged grantor. In Hoffman v. Strohecker, 7 Wats., 86, where a sale has been made under execution upon a satisfied judgment, the satisfaction not appearing of record, an innocent purchaser of the person who purchased at the sale was protected in his title, although the purchaser at the sale had knowledge of the facts, and acquired no title. A similar holding had been made by the same court in Price v. Junkins, 4 Wats., 85, and in Fetterman v. Murphy, Id., 424. In the case of Price v. Junkins it is said “An innocent purchaser of the legal title, without notice of trust or fraud is peculiarly protected in equity, and chancery never lends its aid to enforce a claim for the land against him.”
Most of the cases cited and relied on by the defendant are not in point. Where the grantee wrongfully procures the holder of a deed as an escrow to deliver it to him, he acquires no title, or at least a voidable one; but this is a very different case from where a third person *292 without notice, afterward and while the grantee is in possession, deals with him in good faith as owner. Again, it may be conceded that the delivery of a deed by one who simply holds it as a depositary, transfers no title; but if he holds it as an escroto, with power to deliver it on certain conditions, a delivery, though wrongful, is not in excess of his authority for, in such case, the act is within his authority and binds the principal as against an innocent party; And so a deed held in escrow, delivered after the death of the principal, passes no title. It will readily appear, from reasons already given, that such cases are without application to the case under review. Here it will be conceded that as between the grantor and the grantee the latter took no title, because delivered by Howard contrary to his instruction. But the plaintiff relies on the fact that, as found, he had no knowledge that the deed had ever been held as an escroto and, in good faith, loaned his money and took a mortgage on the land to secure it; and that the defendant is therefore estopped from setting up his legal title as against him.
But it is claimed that, as the plaintiff relies on an estoppel, he should have pleaded it. This rule, however, only applies where the party has had an opportunity to do so. In this case he had none until the evidence had been introduced. The defendant, in his answer and cross-petition, set up that the deed from him had been placed in escrow and wrongfully delivered to the grantee and that the plaintiff had knowledge of the facts. The plaintiff then averred his. want of any knowledge or belief as to the facts stated by the defendant and denied them. The court, however, found that the deed had been delivered to Howard Colvin to *293 be held as an escroto and was by him wrongfully delivered to the grantee; but also found that the plaintiff was ignorant of the facts, and an innocent purchaser for value without notice. ,. The object of pleading is to inform the opposite ■ party of the facts upon which the pleader relies as the ground of his claim or defense. And here, when the plaintiff denied knowledge of the facts as pleaded by the defendant, he fairly advised the defendant that he relied on an estoppel, on the ground of want of notice, should the facts as pleaded be made to appear in the evidence; for, that he was a purchaser for value appeared from his petition, which was taken as true as it was not controverted. Hence the claim of the plaintiff could in no way surprise the defendant unless he was ignorant of the law. The first opportunity the plaintiff had to plead an estoppel as against James E. Colvin, was when the facts were fully made to appear in evidence; and he is not therefore precluded from doing so on the facts as found by the court.
Judgment reversed and judgment on the facts fot• plaintiff in error.