Belden vs. Hurlbut and others.

---

BELDEN, Respondent, vs. HURLBUT and others, imp., Appellants.

*November 27 — December 15, 1896.*

*Suretyship: Bond of administrator: Conditional delivery: Failure to procure additional signatures: Agency: Parties: Substitution: Appeal: Matter occurring after judgment: Partial payment of judgment by joint obligors.*

1. An administrator, having been required to file an additional bond, procured a blank for that purpose, and left it with D., the cashier of a bank, who undertook to procure the signatures of sufficient sureties from among the directors, with the understanding that the moneys of the estate were to be deposited in the bank. In pursuance of such arrangement two of the directors signed the bond and left it with D. with the understanding that he was to obtain the signatures of the other directors before delivering it. Before any other signatures had been obtained the county judge called upon D., obtained the bond without knowledge of any condition affecting its validity, and approved and filed it. There was nothing on the face of the bond indicating that other sureties were expected to sign it. *Held,* that the sureties were bound. *Beloit & M. R. Co. v. Palmer,* 19 Wis. 574, and *Chipman v. Tucker,* 38 Wis. 43, distinguished and limited.

2. Since D. was acting for and at the request of the administrator in procuring the sureties, his possession of the bond was in legal effect the possession of the administrator.

3. Where there has been a change of interest of the successful party to an action pending an appeal, a substitution of parties under sec. 2801, R. S., is not absolutely necessary, but the appeal may be defended in the name of the original respondent, and the rights of the successful party protected in the trial court.

4. Whether a judgment against joint obligors has been partially paid by some of them, being a matter occurring after judgment, cannot be considered on appeal, but the trial court has ample power to pass upon that question, and to see that the amount paid is duly credited.

APPEAL from a judgment of the circuit court for Racine county: D. H. JOHNSON, Judge. *Affirmed.*

This is an action, brought by the county judge of Racine county, under subd. 4, sec. 4014, R. S., to recover for breach of two administration bonds. The facts in the case, which are undisputed or found by the court upon ample evidence, are briefly as follows: One Alexander Bugbee died in September, 1894, intestate, in the city of Racine, leaving an estate amounting to more than $100,000, and leaving surviving him as his heirs at law his widow, Lavinia Bugbee, and four children, Emma, Ida, Walter, and Carrie,— the last two of said children being minors. On the 10th day of November, 1894, one David Spencer was appointed administrator of the estate, and filed his bond as such administrator in the sum of $70,000, which bond was signed by the widow, Lavinia, and the two adult children, Emma and Ida, as sureties. On the 14th day of November the court, deeming the bond already given inadequate, made an order requiring Spencer to give an additional bond, with sureties, in the penal sum of $110,000. Upon the making of this order, Spencer, who had already entered upon his duties, procured from the county judge an administration bond in the usual form, which was filled out, except that the spaces for the names of the sureties were left blank, and took it to one E. C. Deane, the cashier of a bank at Racine, and requested him to procure the signatures of sufficient sureties. Mr. Deane undertook to procure the signatures of sufficient sureties from among the directors of the bank, the understanding being that the moneys of the estate were to be deposited in his bank. In pursuance of this arrangement Mr.

O. R. Johnson and *Mr. H. W. Hurlbut,* who were directors of the bank, signed the bond as sureties, and left it with Mr. Deane, with the understanding that he was to obtain the signatures of the other directors of the bank before delivering it. Before obtaining any other signatures, however, the county judge called upon Mr. Deane and obtained the bond without knowledge of any condition affecting in any way its validity, filed and approved it. Mr. Spencer proceeded to administer the estate for about a year, when, upon proceedings duly had, he was removed by the county court, and one .C. R. Carpenter appointed administrator *de bonis non.* Upon the accounting before the county court after his removal, it was found and adjudged that Mr. Spencer had failed to account for $6,340.40, which amount he was ordered to pay over to the administrator *de bonis non.* Upon his failure to comply with this judgment this action was brought jointly against the sureties upon both bonds. After the commencement of the action Mr. Johnson died testate, and the appellants *Emily Johnson* and others were duly appointed and have qualified as executors of his last will and testament. Upon these facts judgment was rendered against the three sureties upon the first bond and against *Mr. Hurlbut* and the executors of Johnson for the entire amount of Spencer's deficit, with costs. From this judgment *Hurlbut* and the executors of Johnson appealed.

*Thomas M. Kearney,* for the appellants, contended, *inter alia,* that the mere possession of a written obligation without the consent of the maker and its possession evidenced by what is known in the law as its delivery, gives no right of action thereon to the holder, however innocent or faultless he may be. *State Bank v. Evans,* 15 N. J. Law, 155; *S. C.* 28 Am. Dec. 400; *Jackson v. Catlin,* 2 Johns. 248; Sheppard's Touchstone, 59; *Stone v. Duvall,* 77 Ill. 475; *Allen v. Ayer,* 26 Oreg. 589; *Henry v. Carson,* 96 Ind. 422; *People v. Bostwick,* 32 N. Y. 445; *Whitford v. Laidler,* 94

id. 145; *King v. Smith*, 2 Leigh, 157; *Bibb v. Reid*, 3 Ala. 88; *Robertson v. Coker*, 11 id. 466; *Fireman's Ins. Co. v. McMillan*, 29 id. 160; *Fertig v. Bucher*, 3 Pa. St. 308; *Whitsell v. Mebane*, 64 N. C. 345; Baylies, Sureties & G. 97; *Ayers v. Milroy*, 53 Mo. 516; *Linn Co. v. Farris*, 52 id. 75; *Carter v. McClintock*, 29 id. 464.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *Chas. E. Wild*. They argued, among other things, that when a surety signs a bond complete in itself and intrusts it to his principal or other co-obligor or other party to be delivered to the obligee after obtaining other signatures, and it is delivered without performing the oral condition, the surety is bound by it if the obligee had no notice of the condition. *McCormick v. Bay City*, 23 Mich. 457; *State v. Peck*, 53 Me. 284; *Dair v. U. S.* 16 Wall. 1; *York Co. M. F. Ins. Co. v. Brooks*, 51 Me. 506, 3 Am. L. Reg. (N. S.), 399, note; *Russell v. Freer*, 56 N. Y. 67; *State v. Potter*, 63 Mo. 212; *Cutter v. Roberts*, 7 Neb. 4; *Nash v. Fugate*, 24 Grat. 202; *Dun v. Garrett*, 93 Tenn. 650; *Owen v. Udall*, 39 Neb. 14; Brandt, Suretyship & G. (1st ed.), § 355.

WINSLOW, J. The appellants insist that the second bond, which bears the names of *Hurlbut* and Johnson as sureties, was never delivered so as to become a binding obligation upon them. Their contention is that, having left the bond with Deane upon the understanding that other sureties were to sign before delivery, there could be no delivery as against them until such condition was complied with, notwithstanding the fact that the county judge knew nothing of the condition when he received and approved the bond, and even though there was nothing on the face of the bond indicating that other sureties were expected to sign.

The manifest consequences of such a principle, when applied to the vast number of official bonds which are con-

stantly being given, are so serious and far reaching that, if it is to be accepted, it must needs be based upon very cogent reasoning and strong authority.   The argument in support of the proposition is this:   There must be a delivery of an obligation before it is binding; there cannot be a delivery without intention to deliver; hence, as Johnson and *Hurl-but* had no intention to deliver the bond, and the act of Deane was unauthorized, the instrument has never been delivered, so as to become binding upon them.   There are cases which seem more or less fully to support the proposition. Among them may be noted *Pawling v. U. S.* 4 Cranch, 219; *State Bank v. Evans*, 15 N. J. Law, 155; *Bibb v. Reid*, 3 Ala. 88; *People v. Bostwick*, 32 N. Y. 445.   The current of decision, and especially of modern decision, is, however, decidedly to the contrary.

In the case of *Dair v. U. S.* 16 Wall. 1, which was an action upon an official bond, the exact contention now before us was made; but it was entirely repudiated.   It was there held that sureties who had signed a distiller's bond, and left it with their principal to be delivered only upon his obtaining certain other sureties, were estopped to deny the due delivery of the bond where it had been delivered by the principal to the officers of the government, who did not know of the condition; there being nothing on the face of the bond to indicate that other sureties were expected to sign.   In the opinion in that case the following very pertinent observation is made:   "It is easy to see that, if obligors are at liberty, when litigation arises and loss is likely to fall upon them, to set up a condition unknown to the person whose duty it was to take the bond, and which is unjust in its result, the difficulties of procuring satisfactory indemnity from those who are required by law to give it will be greatly increased.   Especially is that so since parties to the action are permitted to testify."   This case was followed in *Russell v. Freer*, 56 N. Y. 67, when the previous

case of *People v. Bostwick, supra,* was practically overruled. In the revised edition (with notes) of the New York Reports will be found an exhaustive note, subjoined to the case of *People v. Bostwick,* citing more than twenty cases in various courts of last resort which have disapproved of the principle laid down in the *Bostwick Case.* We shall content ourselves with citing a few of these cases: *State v. Peck,* 53 Me. 284; *McCormick v. Bay City,* 23 Mich. 457; *Bangs v. Bangs,* 41 Hun, 41; *Thomas v. Bleakie,* 136 Mass. 568; *State v. Potter,* 63 Mo. 212.

In the case of *State v. Peck* the following apt remarks are made which apply exactly to the case before us: "It is believed that the doctrine contended for in the defense here would be mischievous beyond endurance. Take, for example, that very numerous class of securities,— probate bonds,— varying in amount from less than one hundred dollars to many thousands, seldom executed in the presence of both parties, rarely becoming the subjects of litigation till after such a lapse of time that the details of the transaction have faded and become obscure in the memory of the actors. What can be done to insure their validity if the obligors are at liberty, under the stimulus of impending loss, to do away with their declaration of absolute delivery (which they have caused to be subscribed in their own presence and allowed to be presented to the probate judge) by some ill-remembered conversation about other proposed sureties, whom they now claim as indispensable parties, no hint of which conversation has ever reached the officer who receives and approves the bond? The simplest maxims of good faith forbid the effect which the defendants propose to give to their conversation among themselves." It would be difficult to state the considerations bearing against the doctrine urged by the appellants more strongly than is done in the above quotation, and we shall not make the attempt. The cases cited all go upon the principle of estoppel, or upon that other principle, which

is closely akin, if not identical, namely, that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. The modern text writers also sustain the doctrine of the *Dair Case.* See 2 Brandt, Suretyship (2d ed.), § 408, where the authorities are collected in a note; Murfree, Off. Bonds, § 166. There may, indeed, be a different rule where a bond is committed to a stranger, to be delivered only upon performance of some condition (Baylies, Sureties & G. 99, 100); but the courts are now well-nigh unanimous that, if a surety clothes his principal with apparent authority to deliver a bond bearing no indication on its face that others are to sign it, and it is delivered to the obligee and acted upon by him without notice of any condition, the surety is bound. In the present case, while the bond was not given to the principal himself, it was given to Mr. Deane, who was acting for Mr. Spencer and at his request in procuring sureties; and his possession of the bond must be considered as the same, in legal effect, as though Spencer had possession of it.

While the principles above stated have been adopted by the great majority of the courts of last resort which have had occasion to consider the question, it is vigorously and ably contended that a different rule has been laid down in several cases which have come before this court, and hence a consideration of those cases becomes necessary.

There is a class of cases in this court holding substantially that, where it appears clearly and satisfactorily that one signed a negotiable note relying upon fraudulent representations that the paper was of a different character, he is not bound thereby, even in the hands of a *bona fide* holder for value, if he be not guilty of negligence in failing to ascertain its true character. *Walker v. Ebert,* 29 Wis. 194; *Kellogg v. Steiner,* 29 Wis. 626. This principle, plainly, is not in any sense applicable to the present case.

Again, there is another class of cases holding or intimat-

ing, in effect, that where a deed is executed and held by the grantor, or placed in escrow, and it is afterwards purloined by the grantee, or obtained by fraud from the grantor or the depositary, without consent of the grantor, and without performance of the conditions, it will pass no title, even in the hands of a *bona fide* purchaser, at least in the absence of negligence by the grantor. This class includes the cases of *Everts v. Agnes*, 4 Wis. 343; *S. C.* 6 Wis. 453; *Tisher v. Beckwith*, 30 Wis. 55. See, also, *Andrews v. Thayer*, 30 Wis. 228. In this last-named class, like the preceding class, there is the element of actual and intentional fraud on the part of the grantee, and the obligation or security is deemed to be vitiated by such fraud, so that it can acquire no validity even in the hands of an innocent purchaser, provided there be no element of estoppel arising from negligence on the part of the grantor or obligor. There are certainly two cases, however, which approach quite closely the question before us, and these are the cases of *Beloit & M. R. Co. v. Palmer*, 19 Wis. 574, and *Chipman v. Tucker*, 38 Wis. 43. In the first of these cases Palmer signed a subscription to the stock of a railroad, with others, and left the list with a fellow subscriber, with the understanding that it was not to be delivered unless the depot was located in a certain place. The list was delivered without performance of the condition, and Palmer was held not to be bound. In the second case Tucker executed a note and mortgage in aid of a railroad, and it was placed in the hands of a custodian, *under an agreement with the agent of the railroad company* that it was not to be delivered until after a meeting of all similar subscribers, and a determination at such meeting to deliver their securities. The custodian having delivered the note and mortgage without performance of the condition and without Tucker's consent, they were held not valid, even in the hands of a *bona fide* purchaser. In the *Tucker Case* it

is evident that there was the element of actual fraud on the part of the grantee, because the condition had been agreed to by both parties, and the security was obtained from the custodian surreptitiously. In the *Palmer Case*, however, it does not appear that the grantee knew of any condition attached to the subscription. While it cannot be denied that these cases, and especially the *Palmer Case*, tend to support the appellants' contention, they differ from the case in hand in that they involve business transactions between man and man only, where the grantee is perfectly able to ascertain and investigate the *status* of the transaction, and they do not involve the considerations of public policy and the preservation of the estates of widows and minors, which are so strongly set forth in the quotations we have made from the cases of *Dair v. U. S.* and *State v. Peck, supra*. If it be necessary to draw a distinction between those cases and the present case, it may with justice be drawn at official and probate bonds. Certainly, we shall not extend the doctrine of those cases to other cases, where the facts are not fully and fairly within the facts of those cases.

It appears, by certain motion papers filed in this court just prior to the argument of the case, that Walter J. Bugbee, one of the heirs, purchased this judgment of the administrator *de bonis non*, and obtained an assignment thereof, and that thereupon the estate was finally settled in the county court, and that the attorneys appearing in this court represent Walter J. Bugbee, and not the county judge. Upon this ground objection was made to their appearance here, and motion was made to exclude them from the case. This only shows that there has been a transfer of interest pending the litigation, and does not make absolutely necessary even a substitution of parties. R. S. sec. 2801. There seems to be no valid or serious objection to allowing the affirmance of the judgment in the name of the county judge.

If, in fact, the whole beneficial interest in it is now owned by Walter, his interest as owner can be protected by the circuit court.

It was suggested, also, that in the course of the settlement of the estate in the county court (after this judgment was entered), the obligors on the first bond, Lavinia, Emma, and Ida, had paid to Walter their share of the liability upon this judgment, viz. seven eighteenths thereof, and that this judgment should not be affirmed as to the whole amount of the defalcation, but, at most, only to the amount of eleven eighteenths thereof. This is a matter occurring after judgment, which we cannot consider. If the judgment has been in fact partially paid, the circuit court will have ample power to determine the fact, and see that the amount paid is duly credited. We find no errors in the record.

*By the Court.*— Judgment affirmed.