POLACHECK and another, Appellants, vs. MOORE, imp., Respondent.

*April 3—April 22, 1902.*

*Bond: Execution by surety: Irregularities in form: Misplaced signatures: Intention to execute: Notice to obligees.*

A bond was drafted in form for two sureties, but the name of one only was inserted. It was signed by the principal in the proper place and also at the foot of an imperfect affidavit of justification, which was originally drafted for two sureties but afterwards changed for one. The surety signed only at the foot of said affidavit, and the seals were also there. The surety testified that he had refused to sign as surety, but had agreed to do so if another satisfactory surety were found; that he signed the affidavit merely to indicate his willingness to become a surety, and delivered the paper to the principal with the understanding that when the other surety should be procured the two sureties and the principal would go before an officer and perfect the instrument. The principal thereafter procured a notary to sign the affidavit, and delivered the bond in the form above indicated to the obligees. *Held*, that the condition of the instrument was such as to put the obligees upon inquiry as to whether the surety signed the affidavit with the intention of executing the bond; and that the evidence sustains a finding that he did not execute the bond and that he was not guilty of negligence which reasonably misled the obligees.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action to recover on a bond alleged to have been given to plaintiffs by defendant Lucas as principal, with defendant *William Moore* as sole surety, to secure the faithful performance by Lucas of an agency contract. The following is a copy of the instrument in the condition it was in at the time of the delivery to plaintiffs:

KNOW ALL MEN BY THESE PRESENTS:    That we, J. W. Lucas, as principal, and. *Wm Moore*.....and ........................as sureties, all of Menominee, Michigan, are held and firmly bound unto J. & S. Polacheck, of Milwaukee, Wisconsin, in the sum of three hundred ($300.00) dollars, to be paid to the said J. & S. Polacheck, or their certain attorney, executors, administrators or assigns. And said J. W. Lucas does hereby agree that on the first day of each month to mail to J. & S. Polacheck a true statement of all goods sold and delivered, and also remit in full for the same, for which payment well and truly to be made, we bind ourselves, our heirs, and executors, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION is such that if the above bounden J. W. Lucas, his heirs, executors and administrators shall and do well and truly pay or cause to be paid to the above named J. & S. Polacheck for all clothes, or money for the same, that he shall receive for the same, as their agent, without fraud or delay, then this obligation to be void; otherwise to remain in full force and virtue.

State of Michigan : ss
Menominee county :

*J. W. Lucas*

*Wm Moore*........and
..................................., being each for himself duly sworn deposes and says that he is worth over and above his debts and liabilities

..................................

Sealed this..26..day of January, 1898.
    *February*

State of Michigan *Wisconsin* :
    *Marinette*
City of Menominee :
    *Marinette*
County of Menominee:

*J. W. Lucas*........(Seal)
*Wm Moore*.....(Seal)
\....................(Seal)

                    BERNARD H. ANDERLY,
                        Notary Public.

The paper was signed by the principal in the proper place, but not by the surety. The latter testified, under objection, that he refused to sign as surety; that he consented to do so upon another satisfactory surety being produced; that he signed the affidavit merely to indicate willingness to become a surety, and delivered the paper to Lucas with the understanding that another satisfactory surety should be produced and that both sureties and Lucas should then go before an officer and perfect the instrument. The evidence showed that Lucas, without knowledge or consent of *Moore,* procured a notary to sign the affidavit and perfect the paper in the form above indicated; and that he delivered the same to plaintiffs in that condition; that plaintiffs had no notice of the circumstances stated, but relied on the paper as having been duly executed by defendants; that Lucas made default in the conditions thereof, as stated in the complaint.

The referee to whom the cause was referred to hear, try and determine, decided accordingly, and that *Moore* had ample opportunity to inform plaintiffs of the condition under which he signed the paper before they dealt with Lucas on the faith thereof; that Lucas made default to the amount of $388.63, no part of which has been paid; that compliance by *Moore* with the conditions of the bond was demanded by plaintiffs before they commenced this action, and that, by reason of the facts, *Moore* became liable to them for the full penal sum of $300.

The court, on motion, modified the findings of the referee by adding the following: *Moore,* in signing the blank affidavit at the foot of the bond, did not intend to execute the paper as surety. The bond was so defective when delivered to plaintiffs that, as men of reasonable prudence, they should have investigated the cause thereof, and that such investigation would have made known to them the facts in regard to *Moore's* connection with the paper. Plaintiffs are entitled to judgment against Lucas for the amount of his indebtedness,

$388.63. *Moore* is entitled to judgment dismissing the complaint as to him with costs. Judgment was rendered accordingly.

*Max W. Nohl,* for the appellants.

For the respondent there was a brief by *Eastman & Martineau,* and oral argument by *Pierre Martineau.*

MARSHALL, J.   A considerable portion of the brief of counsel for appellants is taken up with the proposition that if a person signs a bond as surety, with a verbal condition that it shall not be binding till another person signs as surety, or with some other verbal condition, and leaves the instrument, subject thereto, with the principal, thereby clothing him with apparent authority to complete the paper and deliver it, or putting him in such a position that he can readily do so without the obligee knowing the facts, and he makes delivery of the paper without complying with the condition, and the obligee, without notice of the breach of authority or such reasonable means of knowledge thereof as would put an ordinarily prudent person upon inquiry as to the facts, in good faith relies upon the instrument, the conditional signer is estopped from denying that he is liable as indicated upon the face of the instrument.   It is claimed that such proposition is in harmony with *Belden v. Hurlbut,* 94 Wis. 562, 69 N. W. 357; *New Home S. M. Co. v. Simon,* 104 Wis. 120, 80 N. W. 71; and *Rehbein v. Rahr,* 109 Wis. 136, 143, 85 N. W. 315.   We are unable to see how that has anything to do with this case if, as found by the referee and the court, *Moore* did not execute the bond, conditionally or otherwise, or do anything liable to mislead a person of ordinary prudence into believing that he did.   Therefore, we omit to pass upon it, without intending to cast any doubt upon anything said in either of the cited cases.

By proper exceptions and assignments of error appellants' counsel challenge the decision of the court above referred to.

If the purpose of *Moore's* signing the paper is open to investigation, there can be no reasonable controversy but that the conclusion complained of is right. The proper place for the signatures of the principal and surety to a bond is at the foot thereof. True, that is also the place for the seals, and in this case they were at the ends of the lines drawn to indicate the proper places for signatures to the justification. That indicates that they were misplaced. Without discussing all the peculiar features of the instrument, it is considered that the court was amply justified in holding that they were such as to put a reasonably prudent person upon inquiry as to whether respondent's signature was affixed to the paper with the intention of executing it. The name *"Wm. Moore"* at the foot of the informal affidavit of justification, conceded to be in respondent's handwriting, is plainly not in the same handwriting as the same name at the proper place in the body of the affidavit. It is not so located that it can reasonably be considered a signature to the bond. It follows the venue of the affidavit and is clearly a part thereof. The principal signed the bond in the proper place. True, he also signed the affidavit, but that does not militate against the fact that he recognized that the proper place to sign for the purpose of executing the bond was at the foot thereof. The affidavit was drafted to be signed by two sureties, and was afterwards changed. The indications are that the same pen and hand that made such change wrote the name *"Wm. Moore"* at the commencement of the affidavit. There are several other features about the instrument that are peculiar. Those to which reference has been particularly made are ample to arouse in the mind of any man of common sense and prudence at least a reasonable doubt as to the purpose of *Moore's* signing as he did. The court rightly modified the decision of the referee as indicated.

Appellants' counsel contends that it is not essential to the validity of a bond that the signatures of the parties thereto

should be in their proper places. That is true, but the conclusion drawn by the referee therefrom on the evidence does not follow. If the signature of a surety to a bond is so placed as to fairly raise a question as to whether it was affixed with intent to execute the instrument, that question must be solved as one of fact upon evidence. It by no means follows as a. matter of law, because it is not necessary in order to hold a surety on a bond that his signature be in its proper place,. that he is bound by a misplaced signature. The rule is stated in De Col. Guar. & Prin. & Sur. (3d ed.) 190, thus: "Where· the party to be charged has not signed the instrument in the· usual place, the question is always open to the jury, whether· the party, not having signed it regularly at the foot, meant to be bound by it as it stood, or whether it was left so unsigned because he refused to complete it." The case cited by counsel, and many others, are to the same effect. *Richardson v. Boynton,* 12 Allen, 138; *Garvin v. Dean,* 115 Mass.. 577; *Fournier v. Cyr,* 64 Me. 32.

Having reached the conclusion that the condition of the· instrument sued on, when it came to the hands of appellants, was such as to put them on inquiry as to whether respondent. signed the affidavit with the intention of executing the bond, and that the resulting question was one of fact to be decided upon the evidence, there is little more that need be said. The· question was found by the referee in favor of respondent. The finding was confirmed by the court. All of the direct evidence supports the finding. No circumstance disclosed by the evidence is inconsistent therewith. In 'other words,. all the evidence produced on the subject supports respond-- ent's contention that he never executed the bond, conditionally or otherwise; and the decision of the court, that he was· not guilty of negligence which reasonably misled appellants,. is warranted by the evidence. It follows that the instrument sued on was never a binding obligation upon respondent *Moore,* either because of his having signed it or been guilty

of such acts as to wrongfully mislead the appellants and be thereby chargeable by estoppel. If appellants were misled into accepting the defective paper as a valid bond, as claimed, their loss is chargeable to their own imprudence, and not to any wrongful conduct on the part of *Moore*.

*By the Court.*—The judgment is affirmed.